652 A.2d 308

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jesse BOND, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1994.

Decided Jan. 12, 1995.

James S. Bruno, Philadelphia, for J. Bond.

Catherine Marshall, Ronald Eisenberg, Marilyn F. Murray, Philadelphia, for Commonwealth.

Robert A. Graci, Harrisburg, for Attorney General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

This case is before the Court as an automatic direct appeal from the judgment of sentence of death.[1] Following a trial before a jury, appellant was found guilty of murder in the first degree, robbery, possessing an instrument of a crime and conspiracy.[2] At the penalty phase hearing the jury was presented with evidence of three aggravating circumstances: the defendant committed the killing while in the perpetration of a felony;[3] the defendant has a significant history of felony convictions involving the use or threat of violence to the person;[4] and, the defendant has been convicted of another murder committed either before or at the time of the offense at issue.[5] In mitigation the defense presented evidence of the appellant's character; that his history of felony convictions was not "significant;" and that he was only 25 years of age at the time of the murder.[6] After deliberation, the jury found all three aggravating circumstances, no mitigating circumstances, and returned a verdict of death. For the reasons that follow we affirm the conviction for murder in the first degree and the sentence of death.[7]

1. *See* 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.
2. *See* 18 Pa.C.S. §§ 2502(a), 3701, 907 and 903.
3. 42 Pa.C.S. § 9711(d)(6).
4. 42 Pa.C.S. § 9711(d)(9).
5. 42 Pa.C.S. § 9711(d)(11).
6. *See,* 42 Pa.C.S. § 9711(e)(8), (e)(1) and (e)(4).
7. Appellant has not raised any claims relating to the other crimes for which he was convicted and sentenced.

█ As appellant alleges insufficient evidence was present- · ed to sustain his conviction for murder in the first degree we will begin our review of this case with a discussion of the evidence adduced at trial.

At approximately 6:39 p.m., on the evening of October 31, 1991 appellant and his codefendant, Aaron Wheeler,[8] entered the Stop and Go Deli at 2200 North Broad Street in Philadelphia. While the codefendant acted as a look-out, appellant pointed a gun at a store employee, Yang–Jin Kim, and ordered him to open the cash register and give appellant the money. Mr. Kim called to the store manager, Jai Ho Lee, who was behind the counter. Mr. Kim went to the register and hit the "no-sale" button in order to open the drawer. Mr. Lee closed the drawer and locked the register and then threw the key on the floor. The defendant, who was standing about four feet in front of Mr. Lee when Mr. Lee threw the key on the floor, responded by shooting Mr. Lee in the upper left side of his chest. The bullet entered the left lung and perforated the aorta, the main blood vessel to the heart, and then exited the body. Mr. Lee was pronounced dead fifteen minutes later having bled to death as a result of the gunshot. Appellant and his codefendant fled from the store after the shot was fired.

Appellant and his codefendant each confessed to their participation in the robbery and murder. Appellant asserts, however, that he did not intend to murder Mr. Lee when he fired the gun. Although appellant concedes that firing the gun at Mr. Lee is indicative of malice and the intent to cause serious bodily injury, he argues that as he only fired the gun once, the jury could not reasonably conclude that appellant possessed the requisite specific intent to kill Mr. Lee.

█ Appellant's argument is wholly without merit. Specific intent to kill may be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Jones*, 530 Pa. 591, 610 A.2d 931 (1992). Appellant entered the store with a gun which is clearly a deadly weapon.

---

**8.** The co-defendant received a life sentence which was affirmed by the Superior Court at *Commonwealth v. Wheeler*, 435 Pa.Super. 266, 645 A.2d 853 (1994).

ı

306

Appellant then aimed the gun at a vital part of Mr. Lee's body and pulled the trigger. At the time appellant fired the gun he was standing four feet away from Mr. Lee. Taking all of the circumstances surrounding the shooting into consideration, the jury had sufficient evidence from which they could reasonably conclude appellant possessed the specific intent to kill Mr. Lee. *Commonwealth v. Rollins*, 525 Pa. 335, 580 A.2d 744 (1990). Appellant's claim is thus, without merit.

In addition to reviewing the sufficiency of the evidence in order to address appellant's claim regarding the element of specific intent this Court has a duty to conduct an independent review to determine if the evidence is sufficient to sustain the underlying conviction for murder in the first degree in all cases where a sentence of death has been imposed. *Commonwealth v. Green*, 536 Pa. 599, 640 A.2d 1242 (1994); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In order to prove murder of the first degree the Commonwealth must show that a human being was unlawfully killed, that the accused committed the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624 (1991). Based upon our review of the evidence of record, as set forth above, we conclude that the Commonwealth sufficiently established that Mr. Lee died as the result of an unlawful shooting committed by appellant in an intentional, deliberate and premeditated manner.

Next, appellant argues that his confession should have been suppressed as it was involuntary and also because it was not concluded within six hours of his arrest. Appellant surrendered to authorities on November 25, 1991 at approximately 11:40 a.m. in connection with another murder which had occurred on October 21, 1991. On November 26, 1991 Mr. Kim positively identified appellant from a photo array as the person who shot Mr. Lee on October 31, 1991. On November 27, 1991 at 8:05 p.m. appellant was arrested for the murder in

the instant case. The police informed appellant of his *Miranda*[9] rights and he gave a statement admitting his involvement in the robbery and shooting which resulted in the death of Mr. Lee. Appellant's statement to the police began at 9:55 p.m. and concluded at 12:10 a.m. on November 28, 1991.

Appellant asserts that his statement was coerced by the tactics of the officers who questioned him on the evening of November 27, 1991. Specifically, appellant avers that the officers kept him in a small enclosed room and hollered at him and threatened him with physical violence if he did not confess. The officers testimony contradicted that of appellant. The trial court did not find credible appellant's testimony that he was psychologically intimidated or threatened with physical violence by the officers who questioned him. The Court found the confession to be voluntary and the waiver of constitutional rights to have been valid and denied the motion to suppress the confession as involuntary.

A decision of the suppression court will not be reversed where the factual findings and the legal conclusions drawn therefrom are supported by the record. *Commonwealth v. Brundidge*, 533 Pa. 167, 620 A.2d 1115 (1993). Appellant's arguments regarding the coercion of his confession are identical to those raised in the suppression hearing. Essentially, appellant seeks a different ruling from this Court on the matter of the credibility of the witnesses. Upon review of the testimony and rulings of the suppression court we find the record clearly supports the findings of the lower court and affirm the denial of the motion to suppress. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989).

Additionally, appellant argues that his statement given on November 27th must be suppressed because it occurred 48 hours after his arrest on November 25th and thus was in violation of the six hour rule. *See Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). The six hour rule requires that an arrestee be arraigned within six hours of

9. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

arrest in recognition of the inherently coercive nature of prolonged custodial interrogation. *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987). Appellant claims that since he was in custody from November 25th at 11:40 a.m., the confession made between 9:55 p.m. November 27th and 12:10 a.m. November 28th clearly violates the *Davenport* rule. Appellant overlooks the fact that his initial arrest on the 25th was for a different crime. The arrest for the murder of Mr. Lee did not occur until November 27th. The fact that appellant was in custody for a different offense at the time he was arrested for the instant murder is not relevant to a determination of whether the six hour rule was violated when he confessed to the second murder.

The purpose of the six hour rule as established in *Davenport* and modified in *Duncan* is to insure that an arrestee is not held indefinitely in a coercive custodial atmosphere without the benefit of an arraignment which provides the arrestee with a full explanation of his constitutional rights and the nature of the charges against him. *Duncan*, 514 Pa. at 402–03, 525 A.2d at 1181. In the instant matter the dictates of *Duncan* were not violated. Appellant was arrested and arraigned on November 25th for a homicide that occurred on October 21, 1991. Appellant's subsequent arrest on November 27th for a different crime began a separate event for purposes of the legal requirements of *Duncan*. Thus, appellant's statement of November 27th was concluded within 4 hours and 5 minutes after his arrest on the instant charges and *Duncan* was not violated. Appellant's motion to suppress his confession for violation of the six hour rule was properly denied.

■ In his next allegation of error, the appellant alleges that the District Attorney used his preemptory challenges during the jury selection process to systematically exclude black jurors from the petit jury panel. Appellant claims that his constitutional right to a fair trial as guaranteed by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was violated. In *Commonwealth v. Dinwiddie*, 529 Pa. 66, 601 A.2d 1216

(1992), this Court in applying the rationale of *Batson* to a claim of purposeful discrimination identified the relevant factors which must be established in order to substantiate a prima facie case of discrimination:

> To establish such a case, a defendant first must show that he is of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen for the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Dinwiddie,* 529 Pa. at 71, 601 A.2d at 1218 *quoting, Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).

In the instant case the appellant, and his codefendant with whom he was tried are African–Americans. During jury selection the prosecutor exercised fifteen peremptory challenges to strike eleven black venire persons, three white venire persons and one Hispanic venire person. The prosecutor used his first two peremptory challenges to strike black jurors. He then struck three white jurors and with his sixth peremptory, struck a third black juror. At that point the defense attorneys raised a *Batson* claim and the trial court agreed that a prima facie case had been made, thus requiring the prosecutor to offer a race neutral explanation for the use of the sixth peremptory challenge.[10] The prosecutor stated

10. The defense did not request an explanation as to the first and second black jurors who were struck. We note, however, that the district attorney does offer an explanation for striking these two jurors in his brief to this Court and that the explanations are consistent with the notes of the voir dire examination. The first juror when questioned exhibited qualms about sitting in judgment of another person and also responded that he would be less likely to believe the testimony of a

that the juror's demeanor clearly indicated that she did not want to be on the jury and that she did not relate well to the prosecutor. The trial court accepted the response as legitimate and race neutral.

From that point in the proceedings the prosecutor's use of peremptory challenges was questioned by the defense and explanations were required by the trial court. The seventh challenge was to a black juror whose son had been arrested and charged with conspiracy. The defense conceded that no explanation was necessary for that challenge. The eighth peremptory was used to exclude a black juror who equivocated on the death penalty. The ninth peremptory was used to exclude a black juror who revealed that her ex-boyfriend had committed murder and that she was close friends with an individual charged with drug possession. The tenth peremptory struck a black juror whose nephew was charged with murder and theft. The eleventh challenge was to exclude a Hispanic juror; however, the defense did not demand an explanation. The twelfth and thirteenth challenges were used to strike black jurors who gave equivocal responses regarding their ability to impose the death penalty. The fourteenth challenge was exercised to remove a black juror who stated that she had a very close male friend awaiting trial on robbery charges. The final peremptory under review was used to strike a black juror who by her demeanor demonstrated that she was offended by the questions placed to her by the prosecutor.

When each of the explanations as set forth above was offered by the prosecutor, the trial judge, who was present throughout the entire voir dire, accepted the explanations as legitimate and race neutral. Appellant does not now offer any specific arguments as to why a particular explanation was not acceptable. Rather, appellant makes a generalized assertion that the reasons put forth by the Commonwealth were not racially neutral. Based upon our review of the record we find no reason to disturb the findings of the trial court as to the

police officer over another witness. The second juror stated that her brother had been tried on murder charges.

legitimacy of the race neutral responses offered in this case. *See Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990).[11]

The next three issues raised by appellant are claims of prejudice as a result of being tried jointly with his co-defendant, particularly as each defendant had confessed and implicated the other person in their confessions. First, appellant argues that his constitutional right, provided by both the United States and Pennsylvania constitutions, to confront his accuser was denied by the introduction of the codefendant's statement identifying appellant as the killer. This particular reference occurred during the opening statement of the district attorney.

According to the dictates of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the statements of each of the defendants had been redacted to eliminate the references to each others identity so that the statements would only implicate the individual who uttered them.[12] In the codefendant's statement, references to appellant Bond were deleted and he was referred to as the killer. At one point in his opening the district attorney did state appellant's name rather than the agreed designation of "killer." The defense immediately objected and a side bar conference was convened. The trial court found the reference to have been inadvertent and not overwhelmingly prejudicial. The motion for a mistrial was denied and a cautionary instruction was

11. Although not dispositive of the issue, we note that the final petit jury selected had eight white jurors and four black jurors with two black jurors serving as alternates. The first alternate juror did deliberate in this case as one of the original jurors became indisposed and was excused from service; the record does not indicate the race of the original juror being replaced.

12. Since the decision in *Bruton*, where the United States Supreme Court held that a non-testifying codefendant's confession naming the other defendant cannot be admissible against the defendant as it violates his rights under the confrontation clause of the Sixth Amendment to the United States constitution, this Court has approved the process of "redaction" whereby the names of codefendants are deleted from each others confessions in joint trial situations. *See Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977).

given. The trial court explained to the jury that the opening address by the district attorney was not evidence and that statements of a defendant could only be considered as evidence against the individual who had given the statement.

In his present argument appellant is not contesting the adequacy of the cautionary instructions. In order to understand appellant's specific claim of prejudice on this point the argument must be divided in two parts. One, appellant asserts that redaction of cross-implicating confessions in a joint trial is an inadequate protection of the defendant's right to confront his accuser. Two, when the district attorney named appellant as the other person being referred to in the codefendant's statement that destroyed any protection afforded the appellant by the mechanism of redaction.

As to the first part of appellant's claim, this Court has previously addressed the problem of cross-implicating confessions in joint trials and we have recognized the potential prejudicial effect of admitting these "interlocking" confessions, even in their redacted form. *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977). Admittedly, the redacted confessions along with the other evidence presented may reasonably lead the jury to infer that the "other guy" referred to within the confession of one defendant is obviously the codefendant. This Court recognizes that where the jury can infer that the redacted confession implicates the defendant, the defendant's rights under the confrontation clause are implicated. However, not all violations of the accused's right to confront his witnesses results in reversible error. The appropriate standard for review under these circumstances is the harmless error test as set forth in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986) (violation of a defendant's right to confrontation occurring through the admission of a codefendant's redacted confession is subject to a harmless error analysis).

Before addressing the specific error, we must address the general allegation of error as to the inadequacy of redaction. This Court has consistently found redaction an appropriate method to admit evidence of a confession and simultaneously

protect the accused rights in accordance with *Bruton.* We find that the redactions at issue properly served this purpose.

The specific error is the reference of the district attorney in his opening statement wherein he stated appellant's name as the individual the co-defendant had identified as the killer. An error is harmless only when in light of the overwhelming evidence of guilt it was so insignificant that it could not have contributed to the verdict. *Story; See also Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992). In this case an eyewitness clearly identified appellant as the killer. In addition, the appellant confessed and admitted that he fired the fatal shot. When faced with the overwhelming evidence identifying appellant as the killer, the district attorney's statement as to the contents of the codefendant's confession is harmless error.

We now turn to appellant's second claim of error arising from his joint trial. Appellant asserts that the trial court erred in denying his motion for severance. This argument merely echoes the previous claim that the confessions could not be adequately redacted, and adds the assertion that a severance was thus necessitated. As this Court stated in *Commonwealth v. Wharton,* 530 Pa. 127, 142, 607 A.2d 710, 717–18 (1992):

> The decision to sever trials of codefendants is one within the sound discretion of the trial court, and will not be disturbed on appeal absent a manifest abuse of that discretion. The critical factor that must be considered is whether the accused has been prejudiced by the trial court's decision. (citations omitted).

The appellant claims prejudice because of the confession of his codefendant which clearly implicated appellant. As stated above the confession was redacted and any prejudice to appellant from the inference that he was the "other guy" was minimal in light of his own full confession. Thus, the trial court did not abuse its discretion in denying the motion for severance.

██ The third allegation of error created by the fact that · this was a joint trial occurred when the codefendant's mother testified that her son had called her from jail and said "Mom, they arrested me for another murder." Appellant claims that he was prejudiced by this testimony as it clearly implicated the codefendant in another crime and by extension also implicated appellant. Appellant's claim is without merit. The remark was clearly connected to the codefendant. The trial court immediately ordered the remark stricken and gave a cautionary instruction to the jury. Any prejudice arising from the testimony of the codefendant's mother could only attach to the codefendant, not appellant.

██ In his final allegation of error, appellant argues that the district attorney prejudiced his right to a fair trial by the inflammatory and improper remarks delivered to the jury during his opening and closing statements. A prosecutor's comments will not constitute reversible error unless "the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. D'Amato,* 514 Pa. 471, 490, 526 A.2d 300, 309 (1987). A prosecutor is free to argue any legitimate inferences that arise from the evidence and to do so with force and vigor. *Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986 (1980).

The allegedly prejudicial comment in the prosecutor's opening address was the reference identifying appellant as the anonymous killer named by the codefendant in his confession. We have already addressed this error in appellant's earlier argument as to the inadequacy of redaction. As stated above, this error was harmless in light of the overwhelming evidence linking appellant to this crime as the actual gunman. In addition, we note that this error was inadvertent and that the prosecutor made no attempt to emphasize his misstatement or create hostility or bias in the jury.

The prosecutor's closing statement comes under attack for several reasons. Appellant claims that the district attorney

improperly referred to unredacted portions of the statements of each defendant; improperly compared each of the confessions in order to emphasize to the jury that each defendant implicated the other; used inflammatory innuendo by describing robbery as a murder waiting to happen; argued that appellant was attempting to get a discount for murder; and referred to the defendants as uncivilized. We do not find that the closing argument was so inflammatory as to create in the jurors fixed bias and hostility towards the appellant, so as to deprive him of a fair trial. *D'Amato.*

In his closing, in an effort to rebut appellants argument that the police manufactured his confession, the prosecutor did attempt to reveal unredacted portions of the confession. Defense counsel objected and the objection was sustained; thus, appellant could not have suffered any prejudice. The prosecutor did read to the jury the redacted confessions. However, he did not do a comparison of each statement nor in any way did he emphasize the similarities; that was a matter left to the deliberation of the jury. As we have stated above, the fact that codefendants, within their confessions implicate each other does not of itself cause reversible error. Further, in the context of this case any error created by the interwoven aspect of these two confessions is rendered harmless under the overwhelming weight of the evidence.

As for the prosecutor's reference to robbery as a murder waiting to happen, we agree with the trial court that this comment constitutes legitimate argument. When the district attorney argued that appellant was seeking to get a discount for murder he was responding to appellant's argument that the murder occurred during a robbery, and that he only fired once, thus, not intending to kill, so the verdict should be second degree. We find the prosecutor's comment to be a legitimate response to the argument of appellant. Finally, we find that the prosecutor did not refer to either defendant as uncivilized. Rather the prosecutor argued that

the "accused must be accountable to the law of a civilized state." This comment is not overly prejudicial.

In sum, we have reviewed in their entirety the closing arguments of all counsel and do not find the comments of the prosecution to have overstepped the legitimate bounds of advocacy.

Accordingly, based upon the foregoing reasons, the conviction for murder in the first degree is affirmed.

Finally, in accordance with our statutory duty, 42 Pa.C.S. § 9711(h)(3), we must affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Appellant has raised no challenge to the conclusions reached by the jury with regard to the sentencing phase of the trial.

Upon our review of the record we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We further find that the evidence was sufficient to establish the three aggravating factors found by the jury. Specifically, that the murder occurred in the course of a felony (robbery), that the appellant has a significant history of felony convictions involving the use or threat of violence to the person; and, the defendant has been convicted of another murder committed either before or at the time of the offense at issue. 42 Pa.C.S. § 9711(d)(6), (d)(9) and (d)(11).

In addition, after reviewing the information compiled by our Administrative Office in accordance with the requirements set forth in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296

(1984), we do not find the sentence imposed upon the appellant to be disproportionate to the sentence imposed upon defendants in similar cases. Accordingly, the judgment of sentence of death must be affirmed.[13]

MONTEMURO, J., is sitting by designation.

13. The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Court to the Governor. 42 Pa.C.S. § 9711(i).