827 A.2d 1195

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Wilfredo RAMOS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 2002.

Decided June 16, 2003.

Reargument Denied July 31, 2003.

James S. Bruno, Philadelphia, for Wilfredo Ramos.

Catherine Marshall, Philadelphia, Karla Gebel Perrin, Amy Zapp, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice NIGRO.

A jury found Appellant Wilfredo Ramos guilty of, *inter alia*, first-degree murder for shooting and killing James Crawford.[1] Following a penalty-phase hearing, the jury found one aggravating circumstance[2] and no mitigating circumstances and

---

[1]. The jury also found Appellant guilty of robbery, criminal conspiracy, possessing an instrument of crime, and carrying a firearm without a license.

[2]. The aggravating circumstance the jury found was that Appellant committed the murder during the perpetration of a felony. *See* 42 Pa.C.S. § 9711(d)(6).

accordingly, returned a verdict of death. On January 11, 2000, the trial court formally imposed a sentence of death.[3] Appellant filed timely post-trial motions, which the trial court denied. This direct appeal followed.[4] For the reasons discussed below, we affirm.

■ Appellant initially contends that the evidence was insufficient to sustain his conviction for first-degree murder because the evidence presented by the Commonwealth was "inherently contradictory." Appellant's Br. at 12. As in all cases in which a death sentence has been imposed, this Court must review the evidence independently to determine whether the evidence is sufficient to sustain the conviction for first-degree murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982). In doing so, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found that every element of first-degree murder had been established beyond a reasonable doubt. *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 583 (1998).

■ Evidence is sufficient to sustain a conviction for first-degree murder where the Commonwealth has established that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the defendant committed the killing, and that the killing was deliberate. 18 Pa.C.S. § 2502(d); *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025, 1030 (1996). A specific intent to kill may be inferred from the defendant's use of a weapon on a vital part of the victim's body. *Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308, 311 (1995).

3. Appellant was also sentenced to consecutive terms of ten to twenty years in prison for each of his convictions for robbery and criminal conspiracy but received no additional penalty for his convictions for possessing an instrument of crime and carrying a firearm without a license.

4. Pursuant to 42 Pa.C.S. § 9711(h), a sentence of death is subject to automatic review by this Court.

The record below establishes that on October 11, 1998 at approximately 2:30 in the morning, James Crawford was standing in front of a bar at the corner of Lawrence and Indiana Streets in Philadelphia. Jeanine Davis, the girlfriend of Crawford's cousin, approached Crawford with the intent of procuring drugs from him. Crawford and Davis walked into a nearby abandoned house at the corner of Leithgow and Indiana Streets for the purpose of using drugs. When the two entered the house, Nick Cruz was inside. Meanwhile, Appellant and his half-uncle, Michael Centeno, drove up in a car and parked in the middle of Leithgow Street. Appellant and Centeno exited the car and walked toward the corner of Lawrence and Indiana Streets, where Crawford's friend Robert Kennedy was standing. As Appellant approached Kennedy, he asked Kennedy if anybody had any drugs. In response, Kennedy yelled for Crawford. Crawford told Davis and Cruz that he would be right back, and he left the house.

A few minutes later, Davis, who was standing inside the house, saw Appellant and Crawford together directly in front of the house.[5] As Appellant began to walk away from Crawford, Davis heard Crawford yell, "Yo, man, give me my s--t." N.T., 12/27/1999, at 70. In response, she heard Appellant command Crawford to "[b]ack up." *Id.* Davis then saw Appellant turn around and shoot Crawford in the chest from about three feet away.

Once Crawford fell to the ground, Davis watched Appellant turn around in a circle and look around, which gave her a clear view of Appellant's face. She recognized Appellant from having previously seen him in the neighborhood. Davis then observed Appellant walk across the street and climb into the passenger seat of the car parked on Leithgow Street. The car sped away.

**5.** As the house was dark and its doors and windows were missing, Davis stood just inside the doorway so that she could see and hear what was going on outside without being seen from the outside herself. Similarly, Cruz stood just inside of a window opening to watch and hear these events unfold.

Davis subsequently gave a statement to police in which she described the shooter as a six-foot-tall Hispanic male with a thin build, about twenty to twenty-five years old, which is consistent with Appellant's physical description. Using these characteristics, police generated a line-up containing 106 different photographs. Out of this line-up, Davis selected two different photographs of Appellant and stated that he was the shooter.[6]

On November 17, 1998, Appellant was arrested and interviewed by police. Appellant gave a statement to police, admitting that he had been present at the shooting but accusing Centeno of robbing and shooting Crawford. According to Appellant's statement, as he was on his way to buy drugs at Lawrence and Indiana Streets, he ran into Centeno. When Centeno found out where Appellant was going, he decided to join him, telling Appellant that he was looking to "stick somebody up" and promising to split the proceeds of the robbery with Appellant. N.T., 12/28/1999, at 48 (testimony of Philadelphia Police Detective Richard Reinhold, in which he read Appellant's statement into evidence). Appellant claimed that on the way, Centeno showed him the gun he planned to use to commit the robbery, but Appellant contended that he did not know that Centeno was going to shoot anyone. Appellant also claimed that upon arriving at Lawrence and Indiana Streets, he bought a bag of heroin and four rocks of crack cocaine from Crawford and then walked away. Soon thereafter, according to Appellant, he heard a shot and saw Centeno running down Leithgow Street with a gun in his hand.

At Appellant's trial, Davis testified to what she saw in the early morning hours of October 11, 1998, and identified Appellant as the shooter. The Commonwealth also introduced

6. Cruz and Kennedy also gave statements to police in which they gave physical descriptions of the shooter. Those statements were consistent not only with each other but also consistent with Appellant's physical description. Cruz and Kennedy also gave physical descriptions of the shooter's accomplice that were consistent with each other and with Centeno's physical description. Cruz and Kennedy apparently did not participate in a photographic line-up, however, nor did they testify at trial. Rather, the Commonwealth had Philadelphia Police Detective Richard Reinhold read their police statements into evidence.

Appellant's police statement into evidence to show that Appellant had admitted to being present during the shooting. Furthermore, Dr. Gregory McDonald, a forensic pathologist, testified that Crawford died of a gunshot that was fired into his chest from point-blank range. Officer James Joyce, an expert in firearms identification, testified that the fatal bullet had been fired from a nine-millimeter or a thirty-eight-caliber handgun, which was consistent with the nine-millimeter cartridge case found by police at the scene of the shooting.

■ Given this record, we agree with the trial court that the evidence was clearly sufficient to sustain Appellant's conviction for first-degree murder. As detailed above, there was more than sufficient evidence presented at trial from which the jury could have concluded that Appellant deliberately fired a shot into Crawford's chest, a vital part of the body, and that the gunshot caused Crawford's death. *See Bond,* 652 A.2d at 310–11 (evidence was sufficient to establish first-degree murder where defendant deliberately fired a fatal shot into the victim's chest from close range).

Appellant argues, however, that the evidence was insufficient to sustain his first-degree-murder conviction because the Commonwealth contradicted itself by having Davis identify Appellant as the shooter while also offering into evidence Appellant's statement, in which Appellant identified Centeno as the shooter. However, contrary to Appellant's assertion, the Commonwealth did not contradict itself. Rather, the record reveals that the Commonwealth introduced Appellant's statement into evidence for the limited purpose of showing that Appellant had admitted to being present at the scene of the shooting and therefore had the opportunity to commit the crime. Thus, Davis's identification of Appellant as the shooter did not in any way contradict the Commonwealth's use of Appellant's statement, and Appellant's insufficiency-of-the-evidence claim necessarily fails.[7]

7. In support of his claim, Appellant relies on *Commonwealth v. Karkaria,* 533 Pa. 412, 625 A.2d 1167 (1993). In *Karkaria,* this Court held that the evidence was insufficient as a matter of law to sustain the defendant's conviction for forcible rape because the testimony of the

■ In his second and third claims, Appellant essentially argues that trial counsel was ineffective for failing to object to the trial court's jury instruction on accomplice liability and for failing to file a motion *in limine* in order to redact references to drugs in Appellant's statement to the police. This Court recently held in *Commonwealth v. Grant* that ineffectiveness claims must generally be brought on collateral appeal, as opposed to direct appeal. *Commonwealth v. Grant,* 813 A.2d 726, 738 (Pa.2002). We also held that this new rule would apply retroactively to properly raised and preserved claims of ineffectiveness in all cases on direct appeal at the time *Grant* was decided. *Id.* As the instant case was on direct appeal when *Grant* was decided, *Grant* applies,[8] and therefore, the proper procedure is for this Court to dismiss Appellant's ineffectiveness claims without prejudice to Appellant to raise those claims in a petition filed pursuant to the Post–Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.*

Having concluded that Appellant's claims either lack merit or are not properly before this Court, we must affirm Appellant's sentence of death unless we determine that the sentence was the product of passion, prejudice, or any other arbitrary factor or unless we determine that the evidence fails to support the finding of at least one aggravating circumstance. *See* 42 Pa.C.S. § 9711(h)(3).

■ Upon review of the record, we conclude that Appellant's death sentence was not the product of passion, prejudice, or any other arbitrary factor. Furthermore, we conclude

victim, on which the Commonwealth solely relied for its case-in-chief, was "so unreliable and contradictory that it [wa]s incapable of supporting a verdict of guilty." *Id.* at 1172. Here, as noted above, the evidence on which the Commonwealth relied to convict Appellant was neither unreliable nor contradictory, and therefore Appellant's reliance on *Karkaria* is misplaced.

8. Although we recently explained in *Commonwealth v. Bomar,* No. 276 CAP, 573 Pa. 426, 826 A.2d 831, 2003 WL 21255970 (Pa. May 30, 2003), that, notwithstanding *Grant,* we would review ineffectiveness claims on direct appeal that were addressed by the trial court, *see id.* at 852 – 54, 2003 WL 21255970 at *14–*16, Appellant did not raise these ineffectiveness claims before the trial court, and thus the trial court did not address them. Therefore, *Bomar* is inapplicable here.

that the evidence was sufficient to support the finding of at least one aggravating circumstance, that Appellant committed the murder during the perpetration of a felony, robbery. *See* 42 Pa.C.S. § 9711(d)(6).

Accordingly, we affirm the verdict and sentence of death and dismiss Appellant's claims of trial counsel's ineffectiveness without prejudice to Appellant to raise those claims on collateral appeal.[9]

Former Chief Justice ZAPPALA did not participate in the decision of this case.

---

**9.** The Prothonotary of this Court is hereby directed to transmit the complete record of this case to the Governor of Pennsylvania pursuant to 42 Pa.C.S. § 9711(i).