J-S01005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN LEE HOCKENBERRY | : | |
| | : | |
| Appellant | : | No. 747 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 20, 2022
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0002049-2019

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED: MARCH 1, 2024**

Justin Lee Hockenberry appeals from the judgment of sentence imposed for his conviction of first-degree murder, possession of a controlled substance, abuse of corpse, and tampering with evidence.[1] Hockenberry argues the evidence presented at trial was insufficient to support his conviction for first-degree murder and, in the alternative, the conviction was against the weight of the evidence. We affirm.

Police started a missing person investigation on November 15, 2019, after Christina Kalathas reported her brother, Demetrios "Jimmy" Kalathas missing. The last time anyone saw Jimmy was on November 11, 2019. Jimmy

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a); 35 Pa.C.S. § 780-113 (a)(16); 18 Pa.C.S. §§ 5510, 4910(1), respectfully.

told his friends that he was going to see "Huck," Justin Hockenberry, that evening to collect an $800 debt. Initially, Hockenberry told Jimmy's friends, and even the police, that Jimmy never showed up on the evening of November 11, 2019.

On November 17, 2019, Randall Hockenberry, Hockenberry's nephew, went to the police station. Randall lived with his uncle, Hockenberry, at the time. Randall also frequently drove Hockenberry to and from work at Greenvillage Restaurant. On November 12, 2019, Randall picked up Hockenberry from the restaurant and started to drive home. Hockenberry pulled out a wad of cash and told Randall that he killed his drug dealer. Randall didn't believe Hockenberry at the time. Later that week, Hockenberry gave Randall more details, including that he left Jimmy's body in his white Lincoln Town Car at the Lion's Club. Randall drove by the Lion's Club, saw the white Lincoln Town Car, and ultimately told police what Hockenberry told him.

Police responded to the Lion's Club and located Jimmy's white Lincoln Town Car. Police forced open the trunk and located Jimmy's body, with multiple gunshot wounds.[2] The cause of death was noted as two shotgun wounds, one to the neck and one to the torso. The shot to the neck caused

_____

[2] There is a discrepancy, highlighted by Hockenberry in his brief to this Court, in how many times the victim was shot by the shotgun. **See** Appellant's Brief at 15, 25; N.T. Trial, 10/11/22, Day 2, at 149-150. Whether Hockenberry shot the victim two times or five times does not change the fact that there is sufficient evidence for his conviction of first-degree murder.

injury to the cervical spinal cord, cervical spinal column, and jugular veins. That wound would have caused complete paralysis of the victim and would have been "rapidly fatal." N.T. Trial, 10/11/22, Day 2, at 157-158.

Upon investigation, police determined that Hockenberry shot Jimmy near a pond on the property where Hockenberry lived. Two neighbors heard five gunshots on the night of November 11, 2019. One neighbor, after seeing a light near the pond and hearing a gunshot, decided to investigate. He walked closer to the pond and observed a vehicle, which matched Jimmy's Town Car, and saw a person walking around it. He could not identify the person. He observed the person open multiple doors on the vehicle, open the trunk, and drive away towards the direction of the Lion's Club.

Police searched the area around the pond and located a total of seven discharged shotgun shells. Police also found beaded bracelets, which were later determined to belong to Jimmy. Police also located blood stains in the grass, which were later determined to be blood from Jimmy. Police also searched Hockenberry's room and located drugs (specifically marijuana and cocaine) and rounds for a 12-gauge shotgun but did not locate the shotgun. The shotgun was later discovered at the Lion's Club, between concrete barriers and under debris, exactly where Hockenberry told police he hid it.

The clothes Hockenberry wore at the time of the murder were located in a dumpster at Greenvillage Restaurant. Police located Hockenberry and interviewed him. He initially denied any involvement in Jimmy's murder, but

subsequently confessed that he shot Jimmy with the shotgun and hid his body in the trunk of the victim's own car, which Hockenberry left at the Lion's Club. Hockenberry was charged with homicide, possession of a controlled substance, abuse of corpse, and tampering with evidence.

At trial, held October 10, 2022, through October 18, 2022, Hockenberry did not deny he shot and killed Jimmy. Hockenberry presented a claim of diminished capacity, arguing that he was intoxicated and requested the jury find him guilty of third-degree murder. The jury found Hockenberry guilty of first-degree murder, possession of a controlled substance, abuse of corpse, and tampering with evidence. The court sentenced Hockenberry on December 20, 2022, to life imprisonment without parole, plus a consecutive 8 to 48 months' imprisonment. Hockenberry filed a post-sentence motion on December 29, 2022. The trial court denied the post-sentence motion on April 24, 2023. Hockenberry timely appealed.[3]

Hockenberry presents two issues: his conviction is based upon insufficient evidence as the Commonwealth did not prove his specific intent to kill beyond a reasonable doubt, and the conviction is against the weight of the evidence because the jury should have believed his intoxication defense. Appellant's Brief at 22, 26. Hockenberry argues the same factual basis for

---

[3] The trial court ordered Hockenberry to file a Rule 1925(b) statement of errors complained of on appeal on May 23, 2023. Hockenberry complied and filed his statement on June 13, 2023. *See* Pa.R.A.P. 1925(b).

both claims. He believes that because he presented evidence of his intoxication on the night of the murder, the Commonwealth did not prove his specific intent to kill. *Id.* at 26.

The standard for a claim of insufficient evidence is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003) (internal citations omitted). The Commonwealth need not meet this burden by direct evidence. "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (internal citations omitted).

Criminal homicide is divided into first-degree murder, second-degree murder, and third-degree murder. There are three elements the Commonwealth must prove for first-degree murder: (1) a human was killed unlawfully, (2) the defendant is responsible for the killing, and (3) the defendant acted with both malice and a specific intent to kill. *See Commonwealth v. Galvin*, 985 A.2d 783, 790 (Pa. 2009). "[S]pecific intent to kill is the element that distinguishes first-degree murder from the lesser degrees of murder." *Commonwealth v. Fletcher*, 861 A.2d 898, 907 (Pa.

- 5 -

2004) (internal citations omitted). "Specific intent to kill may be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Bond*, 652 A.2d 308, 311 (Pa. 1995).

Voluntary intoxication is a defense that, if believed by the jury, can reduce first-degree murder to third-degree murder. 18 Pa.C.S. § 308; *Commonwealth v. Marshall*, 633 A.2d 1100, 1104 (Pa. 1993). To succeed on a claim of voluntary intoxication, the evidence presented at trial must demonstrate the defendant was so overwhelmed or so overpowered by the drugs or alcohol, or combination thereof, to the point of losing his faculties and sensibilities at the time he committed the crime. *See id.* "Mere evidence of the consumption of alcohol or drugs and an appearance of intoxication is not sufficient to support a conclusion that a defendant was overwhelmed or overpowered to the point of being incapable of forming the requisite intent to kill." *Commonwealth v. Sanchez*, 82 A.3d 943, 977 (Pa. 2013) (internal citation omitted). "[W]hether a defendant's faculties and sensibilities were so overwhelmed with drugs [or alcohol] so that he could not form the specific intent to kill is a question of fact solely within the province of the jury, who is free to believe any, all, or none of the testimony regarding intoxication." *Fletcher*, 861 A.2d at 908.

Hockenberry did not testify on his own behalf, but instead presented his intoxication defense through cross-examination of the Commonwealth's witnesses, a defense witness, and his own expert. Hockenberry asserted he

drank alcohol and ingested several different drugs during the day and on the night of November 11, 2019. *See* N.T. Trial, 10/13/22, Day 4, at 104, 105, 127. No one observed Hockenberry intoxicated the night of the homicide. The only evidence of what substances Hockenberry ingested came from the experts who interviewed him. *See id.*; N.T. Trial, 10/17/22, Day 6, at 41-42. Hockenberry also presented the testimony of people who knew him prior to the murder and had seen him intoxicated on prior occasions. None of the witnesses who observed Hockenberry intoxicated on prior occasions saw him act out in physical violence. *See* N.T. Trial, 10/11/22, Day 2, at 58, 86-87; N.T. Trial, 10/12/22, Day 3, at 121; N.T. Trial, 10/14/22, Day 5, at 13, 14. Those witnesses did indicate they observed Hockenberry get verbally aggressive when intoxicated and said when he is sober, he is even-tempered and non-violent. *See* N.T. Trial, 10/12/22, Day 3, at 84-85, 120-121; N.T. Trial, 10/14/22, Day 5, at 13.

Hockenberry's expert witness testified that he believed Hockenberry could not form the specific intent to kill. *See* N.T. Trial, 10/13/22, Day 4, at 116, 117-118. The Commonwealth, in rebuttal, presented two expert witnesses to refute Hockenberry's defense of intoxication. *See* N.T. Trial, 10/17/22, Day 6, at 60-61, 66-67, 83, 166-167. The Commonwealth also played the surveillance video from the Lion's Club during the time when Hockenberry drove Jimmy's Town Car with Jimmy in the trunk. *See* N.T. Trial, 10/14/22, Day 5, at 21-28. The video showed Hockenberry enter the parking

lot, drive around, park the Town Car, get out, walk around to discard Jimmy's wallet and cell phone, and finally walk over to where he hid the shotgun between concrete barriers. *See id*.

The Commonwealth also presented evidence that Hockenberry told people he killed his drug dealer, and he never indicated it was because he was too intoxicated to know what he was doing. *See* N.T. Trial, 10/11/22, Day 2, at 64; N.T. Trial, 10/12/22, Day 3, at 110, 112. Finally, although Hockenberry never disputed that Jimmy was unlawfully killed and that he was the one who shot Jimmy, Hockenberry tried to cover up his crime. He deleted a text from Jimmy when police first spoke with him and lied to police and others by telling them he did not see Jimmy the night of the homicide. He never said that he killed Jimmy while too intoxicated to know what he was doing. *See* N.T. Trial, 10/11/22, Day 2, at 30; N.T. Trial, 10/13/22, Day 4, at 26-27.

Based on the foregoing, we agree that the evidence was sufficient. The first two elements of first-degree murder are undisputed: Jimmy was unlawfully killed and Hockenberry was the one who killed him. ***See Galvin***, 985 A.2d at 790. Also, there was sufficient evidence for the third element, malice and specific intent to kill.

Hockenberry shot Jimmy with a shotgun at least twice. Both shots hit a vital part of Jimmy's body, his neck and torso. This evidence alone is enough to support the specific intent and malice necessary for a first-degree murder

conviction. *See Bond*, 652 A.2d at 311; *Commonwealth v. Hinchcliffe*, 388 A.2d 1068, 1071 (Pa. 1978); N.T. Trial, 10/11/22, Day 2, at 148.

As to his claim that the conviction should be for third-degree murder because he was intoxicated, the Commonwealth presented evidence that Hockenberry expressly told people he killed his drug dealer, and he never indicated it was because he was too intoxicated to know what he was doing. The Commonwealth also offered expert testimony, lay witness testimony, and surveillance footage refuting Hockenberry's intoxication defense. Hockenberry's claim that the evidence was insufficient to establish first-degree murder lacks merit.

Turning to Hockenberry's next claim, that the verdict was against the weight of the evidence, our review is one of deference. A trial court may only grant a weight of the evidence claim in extreme situations, when a jury's verdict is "so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citation omitted). We review the trial court's decision for an abuse of discretion. *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019).

The trial court did not abuse its discretion in denying Hockenberry's post-sentence motion alleging the verdict was against the weight of the evidence. The trial court noted that the jury heard from three experts at trial. *See* Trial Court's Opinion, 4/24/23, at 9. One was from the defense, claiming that Hockenberry could not form the specific intent to kill due to his self-

reported drug usage. *See id.* at 10; N.T. Trial, 10/13/22, Day 4, at 116. The other two were from the Commonwealth. The first from the Commonwealth rebutted Hockenberry's expert and believed that even if he did consume the drugs and alcohol Hockenberry said he used, he could still form the specific intent to kill. *See* Trial Court's Opinion, 4/24/23, at 11; N.T. Trial, 10/17/22, Day 6, at 60-61, 76, 83. The second expert the Commonwealth presented did not believe Hockenberry could have used all those substances and still function enough to drive to the Lion's Club to hide Jimmy and the shotgun. *See* Trial Court's Opinion, 4/24/23, at 12; N.T. Trial, 10/17/22, Day 6, at 166-167, 169, 171. The jury watched Hockenberry drive into the parking lot of the Lion's Club, park the car, and dispose of Jimmy's personal items and the shotgun. *See* N.T. Trial, 10/14/22, Day 5, at 21-28. It was within their province to weigh the evidence. The trial court did not abuse its discretion in finding that the conviction was not against the weight of the evidence.

Judgment of Sentence Affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/01/2024