J-A30017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BERNARD G. SHERO | |
| Appellant | No. 2164 EDA 2013 |

Appeal from the Judgment of Sentence June 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003529-2011

BEFORE: LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED MARCH 24, 2015**

Appellant, Bernard G. Shero, appeals from the June 12, 2013 aggregate judgment of sentence of eight to 16 years' imprisonment, followed by five years' probation, after he was found guilty of one count each of rape of a child, involuntary deviate sexual intercourse (IDSI), endangering the welfare of a child (EWOC), corruption of minors, and indecent assault.[1]  After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 4304(a)(1), 6301(a)(1)(i), and 3126(a)(7), respectively.

The victim's parents, J.G. (hereinafter "Father") and S.G. (hereinafter "Mother") married in 1981 and had two sons, J.G., Jr. (hereinafter "Brother") and the victim "D.G."  The victim and his family resided in the northeast section of Philadelphia.  Father was a police sergeant, and Mother was a nurse.  Both parents had attended Catholic school and wanted to provide their sons with a similar education.  They enrolled D.G. and Brother at St. Jerome's School, the Archdiocese parochial school located within walking distance of their home.

D.G. began attending St. Jerome's School in kindergarten.  Physically, D.G. was small for his age.  Despite this, D.G. was very active in school sports and he participated in many extra-curricular activities at St. Jerome's, including serving as altar boy.  Mother recalled that D.G. was an active and rambunctious young boy.  D.G.'s classmate and fellow altar boy, [J.S.P.], remembered D.G. as a "happy kid [who] was always joking."

When D.G. was in seventh and eighth grades at St. Jerome's, however, some of his friends noticed a marked change in D.G.'s demeanor.  According to [J.S.P.], D.G. became "real dark," and secluded himself from everybody.  Another friend and classmate, [R.B.], confirmed this change in D.G.'s personality, testifying that D.G. became a "loner" and "did not talk to too many people."  During this same time period, D.G. complained of testicular pain.  D.G. was examined by a pediatrician and a urologist but the cause of the pain was never determined.  According to Mother, around this time D.G.'s appetite diminished and he lost weight.  Defense witnesses, including St. Jerome's teachers, testified that they did not recall any change in D.G.'s behavior.

After graduating from St. Jerome's, D.G. attended Archbishop Ryan High School where his behavior quickly spiraled out of control.  D.G. became a heavy drug abuser and was expelled from Archbishop Ryan for possession of drugs and weapons.  After his expulsion, D.G. attended the

International Christian High School where he became good friends with fellow student [L.H.]. Early in their friendship, D.G. and [L.H.] were socializing in D.G.'s basement when D.G. confided to [L.H.] that two priests and a teacher had sex with him when he was in the 5th and 6th grades. [L.H.] was stunned by this revelation, but D.G. did not want to discuss further details of the incident at that time.

[L.H.] testified that there was a teacher at the International Christian High School whom neither he nor D.G. liked because the teacher was "really touchy, feely" and because of "weird vibes that came from him all the time, weird sexual-type vibes." Shortly after the conversation in D.G.'s basement, D.G. and [L.H.] were in a classroom at school when the teacher exhibited what they deemed "creepy" behavior. On this occasion, D.G. again mentioned the prior sexual abuse to [L.H.].

D.G.'s high school years were a nightmare for D.G. and his parents. According to Mother, D.G. cut his wrists, drew images of a gun to his head, and wrote suicide notes. He obtained psychiatric help at an in-patient psychiatric facility, but the treatment did not help and "things continued to get worse and worse." D.G.'s drug addiction worsened as he continued to use drugs including marijuana, Percocet, Oxycontin, LSD, and ultimately became a "full blown heroin addict." Over the years, D.G. was treated at over twenty drug rehabilitation clinics. During this same time period D.G. was arrested several times for offenses including retail theft and possession of drug paraphernalia. D.G.'s most recent arrest for possession of heroin occurred in November 2011.

D.G.'s parents could not understand the complete change in their son's behavior and personality and became concerned that there were serious issues at the root of the problem. Mother and Father pleaded with D.G. to open up to them but D.G. refused. When D.G. was eighteen or nineteen years old, however, he suddenly confessed to his

- 3 -

parents that a priest had sexually abused him. After that revelation, D.G. immediately "shut down" again and refused to discuss it further with his parents. It was apparent to Mother and Father that D.G. was not ready or willing to reveal his entire story. Out of concern for D.G.'s fragile and agitated state, and fearing that he would disappear and overdose on drugs, Mother and Father decided not to report this revelation to the police.

The underlying issues driving D.G.'s self-destructive behavior finally began to emerge in detail in January 2009, when D.G. was approximately 20 years old. While undergoing treatment for his heroin addiction at a drug rehabilitation facility called SOAR, D.G. broke down during a group therapy session and revealed to his drug counselor the fact that he had been sexually abused while a young student at St. Jerome's. On January 30, 2009, with the encouragement of his drug treatment counselor, D.G. called the Philadelphia Archdiocese hotline to officially report the abuse. That day, D.G. spoke with Louise Hagner, the victim assistance coordinator for the Archdiocese. Hagner's duties included receiving reports from victims alleging sexual abuse and working to begin providing services to the victims.

D.G.'s initial phone call to the Archdiocese hotline ultimately led to investigations by the Philadelphia District Attorney's Office and Grand Jury. These investigations brought to light the details of the sexual abuse of D.G. at the hands of Appellant, a lay teacher at St. Jerome's, and two St. Jerome's priests, Charles Engelhardt and Edward Avery. All three men were indicted and warrants were issued for their arrests.

Appellant had agreed to surrender himself to police immediately following the issuance of his arrest warrant. When Appellant failed to surrender himself to authorities as planned, Police Detective Drew Snyder and other members of law enforcement went to Appellant's apartment to apprehend him.

Detective Snyder found the Appellant in his home under the influence of what was described as sleeping pills. During a search of Appellant's apartment, no prescription bottle or other evidence was found to indicate what type of pills Appellant had taken. However, Detective Snyder found an envelope addressed to Appellant's parents that contained a letter, a cashier's check, and cash. This letter was determined to be a suicide note in which Appellant apologized to his parents for the "burden [his] situation" had caused. The letter also described the location of Appellant's various assets and personal effects. An ambulance transported Appellant to the hospital for medical treatment and observation. After a few hours of observation in the hospital's emergency department, Appellant was released into police custody.

D.G.'s accounts of the sexual abuse committed by Appellant and the priests varied at different stages of the investigations. A large portion of the jury trial consisted of the defense presenting witnesses and evidence highlighting the inconsistencies and generally attacking D.G.'s credibility. The prosecution provided evidence and witnesses to account for the inconsistencies and corroborate D.G.'s allegations. The jury, as fact-finders [sic], ultimately made a credibility determination in favor of D.G. and found Appellant guilty. The following description of Appellant's sexual abuse of D.G. reflects D.G.'s consistent sworn testimony before the Grand Jury and during the jury trial.

One afternoon during the spring of his 6th grade year, D.G. was serving school detention. Appellant was the detention supervisor that day and offered to give D.G. a ride home. D.G. got into the car with Appellant and told him where he lived. Appellant, however, drove in the opposite direction to a secluded parking lot in Pennypack Park in northeast Philadelphia. Appellant parked, and D.G. recalled that they "sat there and [Appellant] talked to [D.G.] for a minute" and asked if "[he] 'messed'

with girls." Appellant urged D.G. into the back seat of the car and Appellant joined him. Once in the backseat, Appellant started to rub D.G.'s back and undress him. They both began to caress each other's legs and genitals, and D.G. testified that Appellant had D.G. "give [him] a hand job." Appellant next had D.G. perform oral sex on him and then attempted to have anal sex with D.G. D.G. screamed and struggled when Appellant attempted to have anal sex, at which point Appellant had D.G. continue to perform oral sex on him instead. Appellant ultimately ejaculated on the floor and demanded that D.G. get dressed, get out of the car, and walk home. No other incidents of sexual abuse occurred between Appellant and D.G. beyond this one incident.

Trial Court Opinion, 12/17/13, at 2-6 (internal citations and footnotes omitted).

On April 12, 2011, the Commonwealth filed an information, charging Appellant with the above-mentioned offenses, as well as one count each of aggravated indecent assault and criminal conspiracy.[2] On January 14, 2013, Appellant proceeded to a lengthy, joint jury trial with Charles Englehardt.[3] At the conclusion of which, on January 30, 2013, the jury found Appellant guilty of one count each of rape of a child, IDSI, EWOC, corruption of minors, and indecent assault. The aggravated indecent assault charge was

---

[2] 18 Pa.C.S.A. §§ 3125(a)(7) and 903, respectively.

[3] Engelhardt's appeal is currently pending before this Court at 2040 EDA 2013. As discussed *infra*, Avery pled guilty to certain charges in exchange for a lighter sentence. Appellant agreed to be tried jointly with Engelhardt. Commonwealth's Brief at 5 n.2.

- 6 -

*nolle prossed*, and the criminal conspiracy charge was quashed. On June 12, 2013, the trial court imposed an aggregate sentence of eight to 16 years' imprisonment, followed by five years' probation.[4] On June 19, 2013, Appellant filed a timely motion for modification of sentence, which the trial court denied without a hearing on July 9, 2013. On July 11, 2013, Appellant filed a timely notice of appeal.[5]

On appeal, Appellant raises the following six issues for our review.

> I. Did the trial court abuse its discretion in allowing the Commonwealth to present evidence of Appellant's inappropriate behavior with other school children?
>
> II. Did the trial court abuse its discretion in allowing the jury to hear a doctor testify that the victim's testicular pain was consistent with sexual abuse?
>
> III. Did the [trial] court abuse its discretion in refusing to grant relief to [] Appellant from claims of prosecutorial misconduct in the [Commonwealth]'s closing speech to the jury?
>
> IV. Did the trial court abuse its discretion in allowing the [Commonwealth] to cross-

---

[4] Specifically, the trial court sentenced Appellant to eight to 16 years' imprisonment for rape of a child, eight to 16 years' imprisonment for IDSI, three-and-one-half to seven years' imprisonment for EWOC, five years' probation for corruption of minors, and five years' probation for indecent assault. The terms of imprisonment were to run concurrently to each other. The two probationary terms were to run concurrently to each other, but consecutive to the aggregate term of imprisonment.

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

examine Father Edward Avery with references to other student victims in order to paint Avery as a serial child offender and overcome Avery's denial of guilt as to D.G.?

V. Did the [trial] court abuse its discretion in imposing a sentence of 8 to 16 [years'] imprisonment upon Appellant?

VI. Should Appellant's motion for remand to [the trial] court based upon newly discovered evidence be granted?

Appellant's Brief at 3. In Appellant's supplemental brief, he raises the following additional issue.[6]

[Whether this] Court should remand this matter to the [trial court] to allow an evidentiary hearing because the prosecution denied him the due process of law to which [] Appellant was entitled under the federal and state constitutions by reason of the Commonwealth's failure to inform his trial counsel that Judy Cruz-Ransom, whom we now know (from her deposition) had been interviewed by the prosecutors prior to the criminal trial, had provided information which was material and favorable to the defense, to wit, that the testimony provided by social worker Louise Hagner regarding her interview with complainant D.G. on January 30, 2009 was corroborated and confirmed by another witness, *i.e.*, Judy Cruz-Ransom[?]

Appellant's Supplemental Brief at 4-5. Appellant's first, second, and fourth issues pertain to the trial court's evidentiary rulings during the trial. We

---

[6] On July 29, 2014, this Court accepted Appellant's "Application … to Amend Brief and Reproduced Record for Appellant" as a supplemental brief. Superior Court Order, 7/29/14, at 1.

begin by noting our well-settled standard of review regarding evidentiary issues.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 83 A.3d 167 (Pa. 2013).

In his first issue, Appellant avers that the trial court abused its discretion when it admitted evidence that "Appellant had engaged in inappropriate behavior with other school children at the different schools where he was a parochial school teacher." Appellant's Brief at 11. The Commonwealth counters that said evidence became admissible when Appellant "opened the door" by "put[ting] the issues of his relationship with … other children and his reasons for leaving St. Jerome's at issue[.]" Commonwealth's Brief at 13.

Pennsylvania Rule of Evidence 404(b) governs admissibility of evidence of prior bad acts.

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. [*Id.* at] 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. ***Commonwealth v. Powell****,* 956 A.2d 406, 419 (2008).
>
> [***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, ***Sherwood v. Pennsylvania***, 559 U.S. 1111 (2010)]. The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. ***Commonwealth v. Stanley****,* 398 A.2d 631, 633 ([Pa.]1979); ***Commonwealth v. Constant****,* 925 A.2d 810, 821 (Pa. Super. [2006]), *appeal denied*, 932 A.2d 1285 (2007).

***Commonwealth v. Ross***, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*) (parallel citations omitted), *appeal denied*, 72 A.3d 603 (Pa. 2013).

In this case, the Commonwealth filed a motion *in limine* seeking to admit evidence at trial concerning Appellant's alleged inappropriate behavior towards other students at St. Jerome's and other schools in which he was employed as a teacher. The trial court denied the Commonwealth's motion, but with a caveat that said evidence would become admissible if Appellant opened the door. Specifically, the evidence at issue was the following.

Several examples of Appellant's inappropriate behavior were presented to rebut, and possibly explain why students may have harassed Appellant. [R.B], one of D.G.'s friends from St. Jerome's testified that he recalled Appellant giving girls back rubs and snapping one girl's bra straps. The parent of a student at Nazareth Academy, where Appellant previously taught, testified to being very uncomfortable and prohibiting her son from associating with Appellant after Appellant invited her son and his friends into his home. The parent of a student at Saint Michael's School in Levittown, Pennsylvania, where Appellant also previously taught, testified to observing Appellant allowing female students to touch his belt buckle and tie and taking pictures of female students in the recess yard.

Trial Court Opinion, 12/17/13, at 8 (citations omitted).

At trial, Appellant gave the following opening statement to the jury.

We will present witnesses who will testify as to the reputation of both of these [d]efendants and those reputation witnesses will say that they have good reputations, excellent reputations for being peaceful and law-abiding people.

…

Now the [Commonwealth] may suggest that [Appellant] left Saint Jerome's because he had been involved in some nasty behavior with [D.G.] but no allegation was made then. No allegation was made in 2009.

Why did he leave? He left because the kids were bullying him. He couldn't take it anymore. His mom bought a house in the neighborhood so he wouldn't have to drive because he did have a car and we will show you the car and he has a license. He can drive but it is not too good because of his vision. He is legally blind in one eye. The other eye is severely afflicted.

- 11 -

> So they got him a house and he moves into the house and in a space of three or four months, he can't stay there anymore. Why? Because the kids from Saint Jerome's come to his house at night and throw rocks at his house.
>
> He sees a job advertised at the end of the school year in another Catholic school and he leaves, not because he is guilty of a crime, no crime has been alleged, and is this the kind of guy who would do the things that [D.G.] alleges?

N.T., 1/14/13, at 113, 119-121. Appellant also presented his mother as a witness in his own defense, who testified, consistent with Appellant's opening statement, that he left St. Jerome's due to kids throwing rocks at his home and making him feel uncomfortable. N.T., 1/22/13, at 108, 113.

The trial court concluded that the Commonwealth's evidence regarding Appellant's alleged inappropriate behavior with other students became relevant based on the following.

> During his opening arguments, and throughout the trial, Appellant's attorney presented Appellant as a hapless and non-violent victim of aggressive students. For example, Appellant's mother testified that Appellant told her that the children were harassing him and throwing rocks at his home. However, portraying Appellant as a victim was only part of the picture as it failed to also show how Appellant's inappropriate and bizarre behavior towards the young students may have precipitated this unwelcome attention from the students. Appellant attempted to show that he was victimized by students, but the evidence presented by the Commonwealth demonstrates that Appellant victimized the students. Such victimization is clearly a pertinent trait considering the nature of the charges against Appellant of victimizing and abusing D.G. in this case.

…

> It is also important to note that [the trial c]ourt originally **granted** Appellant's pretrial motion *in limine* to exclude the [] evidence of Appellant's inappropriate behavior with other students and parents' concerns. However, once Appellant opened the door by presenting Appellant's character as the victim of bullying and ostracism, and in fact made it one of the showpieces of his defense, this Court determined that Appellant's strange behavior with other young students was relevant and admissible as rebuttal evidence by the Commonwealth.

Trial Court Opinion, 12/17/13, at 7-8 (internal citations omitted; emphasis in original).

After careful review of the certified record, we conclude the trial court did not abuse its discretion. As noted by the trial court, Appellant directly put his relationship with students at issue from the very beginning of the trial. The Commonwealth was permitted to rebut Appellant's evidence, at a minimum, to give the jury a possible explanation for the harassment he had received from other students. *See, e.g.*, **Commonwealth v. Constant**, 925 A.2d 810, 819-820 (Pa. Super. 2007) (evidence of prior confrontation with officer admissible to rebut defendant's theory that subsequent shooting was accidental), *overruled on other grounds*, **Commonwealth v. Minnis**, 83 A.3d 1047, 1053 (Pa. Super. 2014) (*en banc*)[7]; **Commonwealth v.**

---

[7] We note Constant has since received federal *habeas* relief in the Western District of Pennsylvania on grounds unrelated to the Rule 404(b) issue
*(Footnote Continued Next Page)*

***Days***, 784 A.2d 817, 821 (Pa. Super. 2001) (evidence of prior conviction properly admitted to rebut defendant's evidence that he was a non-violent person).

Although Appellant avers that the Commonwealth's evidence was inadmissible because he did not take the stand at trial, this Court has not found such a distinction meaningful in the past. ***See Commonwealth v. DuPont***, 730 A.2d 970, 980-981 (Pa. Super. 1999) (evidence of defendant's prior bad acts admissible to rebut **defense expert's** testimony); ***Commonwealth v. Gelber***, 594 A.2d 672, 679-680 (Pa. Super. 1991) (evidence of prior bad acts admissible to rebut claim of self-defense in defendant's **written confession**), *appeal denied*, 605 A.2d 332 (Pa. 1992).

To the extent Appellant argues that the Commonwealth's evidence should not have been admitted under Rule 403 because its prejudicial effect outweighed its probative value, we reject this argument as well. Generally, Rule 403 will exclude otherwise admissible evidence where the "probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In the case *sub judice*, as noted above, Appellant first introduced evidence and argued to the jury that he left St. Jerome's due to the students

(Footnote Continued) ─────────────

discussed in this Court's opinion. ***Constant v. Pa. Dep't of Corr.***, 912 F. Supp. 2d 279, 308 (W.D. Pa. 2012).

- 14 -

vandalizing his home and harassing him. The Commonwealth's evidence to rebut Appellant's theory was highly relevant. Based on these considerations, we conclude Appellant is not entitled to relief on his first issue. ***See Fischere***, ***supra***.

In his second issue on appeal, Appellant avers that the trial court abused its discretion when it permitted Dr. Gerald Margiotti, D.G.'s pediatrician, to testify that D.G.'s complaint of testicular pain was consistent with sexual abuse. Appellant's Brief at 5. The Commonwealth makes two arguments in response. First, the Commonwealth urges us to summarily reject Appellant's arguments, as said evidence was only admitted against Engelhardt, not Appellant. Commonwealth's Brief at 18. Second, even if this Court were to consider Appellant's claim, the trial court did not abuse its discretion. ***Id.***

Our Supreme Court has held that a defendant cannot complain about evidence admitted only against a co-defendant.

> Pennsylvania has long permitted the limited admission of evidence only as to one party or for one purpose. ***See*** Pa.R.E. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall, or on its own initiative may, restrict the evidence to its proper scope and instruct the jury accordingly."); ***Commonwealth v. Updegrove***, 198 A.2d 534, 537 ([Pa.]1964) (evidence that "is admissible for one purpose … is not inadmissible because it does not satisfy the rules applicable to some other capacity or even because the jury might consider it in the latter capacity") (citation omitted); ***Commonwealth v.***

- 15 -

> *Wright*, 323 A.2d 349, 351-52 ([Pa. Super. 1974) ("Evidence which is admissible for one purpose does not become inadmissible merely because it would be inadmissible if offered for another purpose.") (citation omitted). In fact, it is "common" in joint trials that "evidence is admissible against one co-defendant but inadmissible against another." *Commonwealth v. Travers*, 768 A.2d 845, 847 ([Pa.] 2001). *See also Commonwealth v. Patterson*, 546 A.2d 596, 601 ([Pa.] 1988) (possible prejudicial effect of introduction of evidence against only one of two defendants in joint trial was no "more harmful than the prejudicial effect … habitually tolerate[d] in joint trials where evidence is introduced against only one of the defendants"). A party generally cannot vicariously litigate the claims of another party.

*Commonwealth v. McCrae*, 832 A.2d 1026, 1034 (Pa. 2003) (parallel citations omitted), *cert. denied*, *McCrae v. Pennsylvania*, 543 U.S. 822 (2004).

In this case, Dr. Margiotti testified that D.G. complained of testicular pain in 1999. N.T., 1/22/13, at 39-40. This was one year before D.G. suffered abuse from Appellant, as D.G. testified that the incident with Appellant took place in the Spring of 2000. N.T., 1/15/13, at 242. Dr. Margiotti's testimony was only relative to incidents involving Engelhardt. Appellant is not permitted to argue that the trial court abused its discretion in admitting testimony against Engelhardt. *See Commonwealth v. Bond*, 652 A.2d 308, 314 (Pa. 1995) (summarily rejecting the appellant's argument that "the codefendant's mother testified that her son had called her from jail and said 'Mom, they arrested me for another murder[]'" prejudiced him

where our Supreme Court held "[a]ny prejudice arising from the testimony of the co[-]defendant's mother could only attach to the co[-]defendant, not appellant[]"). Based on these considerations, we conclude Appellant is not entitled to relief on this issue. *See McCrae*, *supra*.

In his fourth issue, Appellant avers that the trial court abused its discretion when it permitted the Commonwealth to cross-examine Edward Avery about other boys Avery had allegedly molested. Appellant's Brief at 39-40. The Commonwealth counters that the evidence was admissible to impeach Avery's credibility and even if it was improper, Appellant did not suffer any prejudice as a result. Commonwealth's Brief at 37.

At trial, the Commonwealth called Avery during its case-in-chief. Avery previously pled guilty to IDSI and criminal conspiracy and was sentenced to two-and-one-half to five years' imprisonment. N.T., 1/17/13, at 140-141. Relevant to this appeal, during its direct examination, the Commonwealth read into the record the recitation of the facts from Avery's guilty plea hearing.[8] Specifically, the factual basis for Avery's guilty plea to IDSI was that "sometime during the spring of 1999, [Avery] was 57 years old at the time. While he was serving as a priest at Saint Jerome's Parish, he engaged in oral sexual intercourse with 10-year-old [D.G.]" *Id.* at 156-157. Avery acknowledged he knew those were the facts to which he pled

---

[8] Appellant did not object to the relevance of this testimony when Avery took the stand at trial, nor does Appellant raise such a challenge on appeal.

guilty. *Id.* at 157. However, during questioning by the Commonwealth at trial, Avery asserted his innocence, despite his guilty plea, and stated that "[he] had no contact whatever [sic] with [D.G.]" *Id.* at 161. Avery also testified that he only pled guilty to get a better sentence. *Id.* at 160. Avery repeated these assertions on cross-examination. *Id.* at 177, 180-181. On redirect examination, the Commonwealth questioned Avery about six other complainants, R.F., R.C., H.A., M.M., G.F., and S.L., all of whom had made claims of sexual abuse against Father Avery. *Id.* at 208-209. Avery denied these allegations. *Id.* at 210. It is this testimony that Appellant objects to, arguing that it was impermissible under Rule 404 and unfairly bolstered D.G.'s credibility. Appellant's Brief at 40.

However, before we may address the merits of this claim, we must first ascertain whether Appellant has preserved it for our review. It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In addition, Pennsylvania Rule of Evidence 103 permits a party to challenge the admission of evidence if the party timely objects and "states the specific ground, unless it was apparent from the context[.]" Pa.R.E. 103(a)(1)(B). This Court has consistently held that "[i]f counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Bedford***, 50 A.3d

707, 713 (Pa. Super. 2012) (*en banc*) (citations omitted), *appeal denied*, 57 A.3d 65 (Pa. 2012).

In the case *sub judice*, Appellant did not object on the basis of Rule 404, or improper bolstering grounds at trial. Rather, the only objection that was made was that the question pertaining to R.C. "was outside the scope of everything." N.T., 1/17/13, 208. Although the trial court responded that "[i]t is absolutely proper impeachment at this time[,]" Appellant did not note any additional basis for his objection, despite having the opportunity to do so. *Id.* As Appellant may not raise a Rule 404 argument for the first time on appeal, we deem this issue waived. *See Bedford*, *supra*.

In his third issue, Appellant avers that the trial court abused its discretion when it denied his request for a mistrial after he objected to two instances in the Commonwealth's summation that he believes amounted to prosecutorial misconduct. Appellant's Brief at 25. Specifically, Appellant alleges the Commonwealth made an improper remark when it implied that there were more charges to come against Engelhardt. *Id.* at 32. Appellant also avers the Commonwealth misstated that D.G. was absent for three-and-one-half days from school during the fourth quarter of the school year in 2000. *Id.* at 25. Appellant argues this was critical to defense strategy because Appellant "attempted to show that such a dramatic event was not likely to have occurred since [D.G.]'s report card for that time period showed

[D.G.] had not missed a single day of school during that reporting period."

*Id.*

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Bedford*, *supra* at 715-716.

First, as to the Commonwealth's reference that no other accusations had been made against Engelhardt "yet," the Commonwealth made the following statements to the jury during its summation.

> [Engelhardt's c]ounsel told you Engelhardt's picture was everywhere. You heard him choose his words carefully, not one child, not one student has come forward. He picked his words carefully. Sometimes the subtle is more powerful than the obvious. What he also didn't tell you was no child, no student has come forward yet. No child, no student has had the courage that [D.G.] has because what he did takes some guts[.]

N.T., 1/25/13, at 142.

In this case, it is not disputed that this portion of the Commonwealth's closing argument was directed at Engelhardt. As noted above, Appellant cannot vicariously litigate claims of another party. *See McCrae*, *supra*.

Although Appellant "joined" in Engelhardt's motion for a mistrial on this issue, it does not alter the fact that Appellant cannot be prejudiced by remarks that were directed at Engelhardt and not at him, when they did not implicate Appellant in any way. *See id.*; *Bond*, *supra*.

As to D.G.'s absences, in its summation the Commonwealth stated that D.G. was absent from school for three-and-one-half days during the fourth quarter of the 1999-2000 school year. N.T., 1/25/13, at 90, 122, 125-126. The Commonwealth acknowledges that this is not correct. *See* Commonwealth's Brief at 40 (stating, "the prosecutor was mistaken as to which quarter of the 1999-2000 school year included the victim's absences from school[]"). However, the Commonwealth also argues that Appellant is not entitled to a new trial as he was not prejudiced by this mistake of fact in the Commonwealth's closing argument. *Id.*

Without evidence that the Commonwealth's misstatement was intentional, Appellant's argument cannot succeed. *See, e.g.*, *Commonwealth v. Simmons*, 662 A.2d 621, 639 (Pa. 1995) (concluding a new trial was not warranted where, "a review of the record does not show that the prosecutor's paraphrasing or misquotation of [a witness]'s testimony was deliberate[]") (citation omitted), *cert. denied*, *Simmons v. Pennsylvania*, 516 U.S. 1128 (1996); *Commonwealth v. Mollett*, 5 A.3d 291, 311 (Pa. Super. 2010) (stating, "[a] prosecutor's declaration[s] during an opening or closing statement constitutes reversible error **only** if the

- 21 -

prosecutor **deliberately** attempts to destroy the objectivity of the jury[]")
(emphases added), *appeal denied*, 14 A.3d 826 (Pa. 2011).

In addition, the trial court also carefully instructed the jury regarding
closing arguments as follows.

> Please keep in mind … that you are not bound by [counsels'] recollection of the evidence nor by their perspective of what the evidence shows.  It is your recollection of the evidence and your recollection alone that must guide your deliberations.
>
> …
>
> If, in my instructions to you, I refer to some particular evidence, it is your recollection of that evidence and yours alone that governs.  You are not bound by recollection of the facts nor by the recollection of Counsel in their arguments to you nor are you to conclude that any evidence which I call to your attention or which Counsel has called to your attention is the only evidence which you should consider.  It is your responsibility to consider all of the evidence that you end up thinking is relevant in deliberating upon your verdict.

N.T., 1/25/13, at 2-3, 160-161.

It is axiomatic that "[t]he jury is presumed to follow the [trial] court's
instructions."  **Commonwealth v. Roney**, 79 A.3d 595, 640 (Pa. 2013)
(citation omitted), *cert. denied*, **Roney v. Pennsylvania**, 135 S. Ct. 56
(2014).  Furthermore, our Supreme Court has held that courts may deem a
prosecutorial misstatement cured by the trial court instructing the jury that
arguments of counsel are not evidence as it did here.  **Commonwealth v.
Smith**, 995 A.2d 1143, 1164 (Pa. 2010) (citation omitted), *cert. denied*,

*Smith v. Pennsylvania*, 131 S. Ct. 518 (2010). As the trial court gave such an instruction in this case, we conclude the trial court did not abuse its discretion in this instance. *See Bedford*, *supra*.

In his fifth issue, Appellant avers that the trial court imposed a sentence which is "excessive and unreasonable[.]" Appellant's Brief at 43. Specifically, Appellant avers that the trial court's sentence was especially unreasonable given that the trial court imposed a sentence that was above even the aggravated range of the sentencing guidelines. *Id.*

At the outset, we note that this issue on appeal pertains to the discretionary aspects of his sentence. It is axiomatic that in this Commonwealth "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Tobin*, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant forwards an argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

In the case *sub judice*, we note that Appellant filed a timely notice of appeal. We further observe that Appellant has included a Rule 2119(f) statement in his brief. Appellant also filed a timely motion for reconsideration of sentence in the trial court. Therefore, we proceed to determine whether Appellant has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *See Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant

advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted).

In his Rule 2119(f) statement, Appellant argues "the sentencing court concentrated solely on the nature of the offense and disregarded mitigating and statutory factors[.]" Appellant's Brief at 10. Appellant also argues that the sentence is unreasonable because it is outside the guidelines. *Id.* at 9. We have stated that a failure to consider the required sentencing factors under 42 Pa.C.S.A. § 9721(b) raises a substantial question. ***See, e.g.***, ***Commonwealth v. Coulverson***, 34 A.3d 135, 143 (Pa. Super. 2011) (stating, "to the extent that [Appellant]'s claim impugns the trial court's failure to offer specific reasons for the sentence that comport with the considerations required in section 9721(b) … we conclude that it raises a substantial question of the court's justification in extending standard range sentences to the statutory maximum[]"). In addition, this Court has concluded that a substantial question is presented for our review when a defendant complains of an excessive sentence that was above the guidelines. ***Commonwealth v. Griffin***, 804 A.2d 1, 7 (Pa. Super. 2002)

(citation omitted), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*, ***Griffin v. Pennsylvania***, 545 U.S. 1148 (2005).  As a result, we grant Appellant's petition for permission to appeal the discretionary aspects of his sentence, and we proceed to address the merits of his claims.

We begin by noting our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citations omitted), *appeal denied*, 105 A.3d 736 (Pa. 2014).

As noted above, Appellant argues that the trial court imposed an excessive sentence that exceeded even the aggravated range of the sentencing guidelines.  Appellant's Brief at 43.  Appellant also argues that the trial court failed to give consideration to certain sentencing factors mandated by Section 9721(b) of the Sentencing Code.  ***Id.*** at 45.

Section 9721(b) addresses the factors that a sentencing court must consider and provides, in relevant part, as follows.

### § 9721. Sentencing generally

…

> **(b) General standards.--**In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing …. In every case in which the court imposes a sentence for a felony or misdemeanor … the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing under sections 2154 … the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence for resentence and resentencing the defendant.

42 Pa.C.S.A. § 9721(b). We note that "a sentencing judge may satisfy [the] requirement of disclosure on the record of his reasons for imposition of a particular sentence without providing a detailed, highly technical statement." *Commonwealth v. Hunzer*, 868 A.2d 498, 514 (Pa. Super. 2005) (citation omitted), *appeal denied*, 880 A.2d 1237 (Pa. 2005).

In this case, the trial court noted that for rape of a child and IDSI, the guidelines called for a standard range sentence at 54 to 60 months' imprisonment, with the aggravated and the mitigated range being plus or minus 12 months. N.T., 6/12/13, at 26. For EWOC, corruption of minors and indecent assault, the guidelines standard guideline range was

restorative sanctions to nine months' imprisonment, with the aggravated and mitigated range being plus or minus three months. *Id.* at 26-27.

The trial court gave the following reasons before imposing sentence.

> And it's [the trial court's] job to weigh the aggravating and mitigating factors for each of you in determining what would be an appropriate punishment. As far as mitigating factors, I do understand that [Appellant has] no prior record, no other arrests, [he has] been gainfully employed in [his life], no histories of violence, except as it relates to these convictions[.]
>
> When [the trial court] take[s] into account the nature of these offenses and for the purposes of sentencing, it's not just what's good for [Appellant]. [The trial court has] other considerations, and those considerations include, in determining the purposes of sentencing, is punishment; what would be appropriate deterrents, rehabilitation.
>
> And in weight the aggravating and mitigating factors and the aggravating factors are just, in and of itself, the nature of the offenses, it is [the trial court's] determination that the standard range guidelines do not … adequately address the serious nature of these offenses, the irreparable harm done to the victims and their families in this case, and nor would the standard guidelines do anything to adequately deter others from committing similar offenses.
>
> …
>
> We cannot allow adults in positions of trust, power and authority, with whom we entrust the care and well-being of our children, to abuse that trust and destroy lives without serious and meaningful consequences.

N.T., 6/12/13, at 96-98.

- 28 -

Based on the trial court's remarks at sentencing, the trial court did not solely rely on the seriousness of the offense as Appellant claims but rather, noted that it was the only aggravating factor it considered. ***See id.*** The trial court explicitly listed several mitigating factors it considered when arriving at what it believed to be an appropriate sentence. In our view, the trial court's statement adequately complies with the dictates of Section 9721(b). It does not follow that the trial court gave the mitigating factors described above "little or no consideration," as Appellant claims, simply because the trial court concluded the seriousness of the offense warranted a higher sentence, outside the sentencing guidelines. Based on these considerations, we conclude the trial court did not abuse its discretion in sentencing. ***See Raven***, ***supra***; ***Hunzer***, ***supra***.

In his sixth issue, Appellant argues that this case should be remanded to the trial court for a hearing on a claim of after-discovered evidence. Appellant's Brief at 47. Pennsylvania Rule of Criminal Procedure 720(C) provides that "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). In addition, the comment to Rule 720 states that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]" ***Id.*** at cmt. We

- 29 -

note that in order to satisfy a claim of after-discovered evidence, a defendant must satisfy the following four-pronged test.

> To obtain relief based on after-discovered evidence, appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Perrin*, --- A.3d ---, 2015 WL 138963, at \*2 (Pa. Super. 2015) (citation omitted).

In this case, Appellant highlights "copies of documents that have been discovered regarding medical and drug treatment records regarding D.G." Appellant's Brief at 48. These were discovered during the discovery phase of the civil case filed against Appellant. *Id.* The Commonwealth counters that the records disclosed in the criminal trial would not have been admissible, as they are statutorily privileged and would only have served as impeachment evidence. Commonwealth's Brief at 51-52.

Our Supreme Court has consistently reminded courts that claims of after-discovered evidence cannot succeed where the proffered evidence would only serve the purpose of impeaching the credibility of a trial witness. *Commonwealth v. Chamberlin*, 30 A.3d 381, 414-415 (Pa. 2011), *cert. denied*, *Chamberlain v. Pennsylvania*, 132 S. Ct. 2337 (2012); *Commonwealth v. Randolph*, 873 A.2d 1277, 1283-1284 (Pa. 2005), *cert. denied*, *Randolph v. Pennsylvania*, 547 U.S. 1058 (2006). In addition,

our Supreme Court recently concluded that this rule applies regardless of the degree of impeachment the evidence would allegedly inflict.

> We must reject as well [the defendant]'s suggestion the trial court erred in finding the third prong of the test was not met; he does so because of the degree of impeachment he anticipates he would inflict. Even if his impeachment would "destroy and obliterate" a witness, it is still impeachment, and the rule does not quantify the degree of impeachment beyond which the rule no longer applies.

***Commonwealth v. Castro***, 93 A.3d 818, 827 n.13 (Pa. 2014).

In the case *sub judice*, Appellant avers that D.G.'s records will serve to show that D.G.'s trial testimony "was part of a fantasy of sexual abuse and a pattern of false statements made by D.G., perhaps to excuse his acts of bad behavior and criminal misconduct, including selling illegal drugs[.]" Appellant's Brief at 51. Appellant requests a new trial because a second jury "will more clearly understand that the testimony of [D.G.] in this case incriminating … Appellant[] does not support a guilty verdict." ***Id.*** Assuming, without deciding, that the aforementioned records would be generally admissible and not privileged, we conclude that Appellant's own argument reveals that their sole purpose would be to impeach D.G.'s credibility. ***See id.*** Therefore, we further conclude that Appellant is not entitled to remand to the trial court for a hearing on his claim of after-discovered evidence. ***See Perrin***, ***supra***.

In his seventh issue, Appellant avers that the Commonwealth committed a *Brady*[9] violation when it withheld that Judy Cruz-Ransom, an investigator with the Archdiocese of Philadelphia was interviewed by the Commonwealth and provided the Commonwealth with information that was favorable to Appellant. Appellant's Supplemental Brief at 4. The Commonwealth counters that Cruz-Ransom was known to the defense, and therefore, the Commonwealth withholding her interview with police from the defense cannot amount to a *Brady* violation. Commonwealth's Brief at 53.

"Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (citation omitted). "Thus, to establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (citations omitted). The Supreme Court has held that evidence is material under *Brady* when "the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.'" *Smith*, *supra*, *quoting* *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

> Pursuant to ***Brady*** and its progeny, the prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police. ***Kyles***[, ***supra*** at 437]. Pursuant to ***Kyles***, "the prosecutor's ***Brady*** obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution." ***Commonwealth v. Burke***, 781 A.2d 1136, 1142 ([Pa.] 2001). Moreover, there is no ***Brady*** violation when the defense has equal access to the allegedly withheld evidence. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1248 ([Pa.] 2006) ("It is well established that no ***Brady*** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence[]" (internal citation omitted)).

***Id.*** (parallel citations omitted).

In this case, Appellant raises a ***Brady*** violation on the basis of the following evidence purportedly obtained by the Commonwealth from Cruz-Ransom.

> The Superior Court should remand this matter to the [trial court] to allow an evidentiary hearing because the [Commonwealth] denied him the due process of law to which the Appellant was entitled under the federal and state constitutions by reasons of the Commonwealth's failure to inform his trial counsel that Judy Cruz-Ransom, whom we now know (from her deposition) had been interviewed by the [Commonwealth] prior to the criminal trial, had provided information which was material and favorable to the defense, to wit, that the testimony provided by social worker Louise Hagner regarding her interview with … D.G. on January 30, 2009 was corroborated and confirmed by another witness, *i.e.*, Judy Cruz-Ransom.

(a)   Ms. [Cruz-]Ransom testified at the deposition of April 9, 2014 at pages 11-13 that she had spoken with [the Commonwealth], along with her own attorney … prior to the criminal trial in this case.

(b)   In said deposition, Ms. [Cruz-]Ransom testified that she was present with Louise Hagner on January 30, 2009 when they interviewed … D.G. regarding his allegations of sexual abuse while a student at St. Jerome's Elementary School in Philadelphia. Her deposition testimony directly corroborated and supported the trial testimony of Louise Hagner to the effect that [D.G.]'s demeanor seemed normal, that [D.G.] was not actually crying and that [D.G.] did not appear in any way to be under the influence of drugs or alcohol at the time of the interview.

(c)   Ms. [Cruz-]Ransom further testified at the deposition that [D.G.] had in fact directed her, as the person who was driving the automobile, to drive to the location at which Appellant … allegedly assaulted [D.G.], to wit, a "dumpster" in front of an apartment building (not in Pennypack Park as was testified to at trial by [D.G.]). Ms. Ransom also recalled that [D.G.] stated that [Appellant] had "choked" D.G. "with a seatbelt", a fact which [D.G.] also denied at the trial.

Appellant's Supplemental Brief at 5-6.

Assuming *arguendo* that the Commonwealth was required to disclose the above statements from Cruz-Ransom, we conclude Appellant has not established that said statements were material for the purposes of **Brady**.

Appellant's supplemental brief on its face acknowledges that the bulk of Cruz-Ransom's statements were merely cumulative evidence, as they would serve to corroborate Hagner's testimony. *See id.* at 5. In addition, the statements would highlight more inconsistencies in D.G.'s accounts of the abuse, which were already well-established to the jury by defense counsel through Hagner's testimony. *See, e.g.*, N.T., 1/23/13, at 49, 56 (Hagner testifying that D.G. told her that Appellant's incident of abuse took place "by a dumpster[]" and it "was not Pennypack Park[]"); *Commonwealth v. Santiago*, 654 A.2d 1062, 1082 (Pa. Super. 1994) (stating, "[s]ince cumulative evidence is not 'material to either guilt or punishment,' the unavailability of cumulative evidence does not deprive the defendant of due process[]"), *quoting* *United States v. Sanchez*, 917 F.2d 607, 618 (1st Cir. 1990), *cert. denied*, *Santiago v. Pennsylvania*, 516 U.S. 995 (1995). Based on these considerations, we conclude Appellant's due process rights were not violated in this case. *See Smith*, *supra*; *Weiss*, *supra*.

Based on the foregoing, we conclude all of Appellant's issues are either waived or devoid of merit. Accordingly, the trial court's June 12, 2013 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015