J-S33024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ALEX WATSON, A/K/A- LESLIE WILLIAMS, A/K/A- TREMANE BOSTIC, A/K/A- TREMONE BOSTIC | No. 1694 EDA 2019 |
| Appellant | |

Appeal from the Judgment of Sentence Entered May 3, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001353-2017

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED SEPTEMBER 04, 2020**

Alex Watson (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and possessing an instrument of crime (PIC).[1]  We affirm.

On May 18, 2015, Appellant shot and killed Alex Fauntelroy (Victim). Appellant was charged with the above crimes and appeared for a jury trial on October 30, 2018.  However, the jury could not reach a unanimous verdict

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a), 6108, and 907(a).

and the trial court declared a mistrial. In advance of his second trial, Appellant

filed a motion to proceed *pro se*, which the trial court granted.[2]

The second jury trial commenced on April 29, 2019. The court provided

a detailed account of the evidence presented at trial:

> On May 18, 2015, at approximately 10:12 p.m., [Victim] was with his sister, Shaheen Ahmed, at her home on Allison Street in Philadelphia. Before the [Victim] left Ahmed's home, he told her he was "going to meet Dil at Master and Conestoga." Ahmed did not know Dil's real name, but knew he was "Aaron's little brother, Leslie." [Appellant], whose legal name is Leslie Williams, also lived on Allison Street. Both [Appellant] and Ahmed's homes are about two blocks from the 1300 block of Conestoga Street, where [Victim's] murder later occurred.
>
> At approximately 11:41 p.m., on the 1300 block of Conestoga Street, between Master and West Thompson Streets, [Appellant shot Victim] eighteen times, killing him. Within seconds of hearing the gunshots, Philadelphia Police Officers Michael Carey and Michael Paige arrived at the crime scene, where [Victim] was lying on his back with no sign of life. They observed multiple fired cartridge casings []. [Victim], who suffered from multiple gunshot wounds to the chest, was pronounced dead at the scene. The officers secured the crime scene and waited for the other responding officers to arrive.
>
> Philadelphia Police Officers Andre Dunkley and Marvin Wilkins arrived to the scene about one minute after Officers Carey and Paige. Officer Dunkley observed the 18 [fired cartridge casings] on the ground trailing from [Victim's] body, in the middle of the block, to the rear of a silver Buick Enclave that was parked at the end of the block, near the corner of Conestoga and West Thompson Street. When looking inside the passenger side window, Officer Dunkley saw a silver handgun with a black handle and the slide locked back. At 12:40 a.m., the Philadelphia Crime Scene Unit arrived and recovered all 18 [fired cartridge casings]

_____

[2] Appellant's court-appointed counsel from his first trial acted as standby counsel during his second trial, and represents Appellant in this appeal. ***See*** Trial Court Opinion, 8/15/19, at 1 n.1.

from the street, [Victim's] cell phone, and a 9 millimeter [R]uger handgun from the car.

Around 2:45 a.m., Officer Wilkins, who remained at the scene to guard the Buick, observed a [Nissan] car pull up to the corner of Conestoga and West Thompson Streets. Quinn Wise got out of the car, walked towards the Buick and attempted to open the front driver's side door. When stopped by officers, Wise claimed it was her vehicle. When questioned by detectives at the Homicide Unit, Wise stated that her daughter's father, [Appellant], told her that the vehicle was on Conestoga Street and asked her to go get it for him. A swab of Wise's DNA was taken.

Keith Schofield arrived in the Nissan with Wise. During an interview with Homicide Detectives, Schofield told detectives that earlier in the evening, he was near Fairmount Park on Kelly Drive with Diashauna Coleman. At approximately 1:34 a.m., after Schofield drove Coleman home, he returned a missed call from [Appellant]. [Appellant] asked Schofield to meet him on Master Street between 52nd and 53rd Street. When Schofield arrived, [Appellant] proclaimed, "I f***ed up . . . I might have f***ed up." [Appellant] then instructed Schofield to take Wise to get the car from Conestoga Street. Schofield identified [Appellant] in a photograph as the individual that told him to retrieve the car.

The Homicide Unit focused their investigation on [Appellant]. On November 20, 2015, in an attempt to locate [Appellant] and obtain his DNA, Philadelphia Detective Joseph Bamberski and United States Marshals Fugitive Task Force Agent Timothy Stevenson went to 1336 N. Allison Street, [Appellant's] approved parole residence. [Appellant's] mother and brother, Aaron Williams, indicated that [Appellant] was not home. On November 23, 2015, Detective Bamberski and Agent Stevenson went back to [Appellant's] address, and were again unsuccessful in locating him. On February 24, 2016, [Appellant] was located by Detective Bamberski and Agent Stevenson at an apartment on the 5100 block of Regent Street in Philadelphia. In furtherance of their investigation, [Appellant] was brought to the Homicide Unit for questioning and a buccal swab.

A search of [Appellant's] cell phone [] revealed that on November 21, 2015, [Appellant] had taken a screenshot of a conversation in which he was discussing the United States Marshals waiting outside his home with a search warrant. On

November 27, 2015, [Appellant] downloaded a PDF of the "Most Wanted" list from the Pennsylvania State Police website.

Detective [James] Dunlap reviewed the phone records for [Appellant's] phone number and discovered that on the night of the murder between 10:01 p.m. and 1:53 a.m., [Appellant's] phone was within the geographical area of the crime scene.

Brittany Rehrig, a forensic scientist at the Philadelphia Forensic Lab, conducted DNA analysis of the handgun and the Buick. [Appellant's] DNA was found on the handgun's slide, grip, and trigger, and the Buick's steering wheel. Wise's DNA was detected as a major source on the handgun's magazine. Her DNA was also found on the gearshift and radio control area. The results for [Appellant's] DNA on the front and rear driver's side door handles, magazine, gearshift, and radio control area were determined to be inconclusive, but his DNA was not excluded as a source. A defense expert, Katherine Cross, concurred with Rehrig's overall conclusions that [Appellant's] DNA was present as a major source on the handgun. On December 13, 2016, after [Appellant's] DNA was confirmed as a match, an arrest warrant was prepared.

According to Police Officer Kelly Walker, an expert in the Firearms Identification Unit, all 18 [cartridge casings] were fired from the same handgun, the 9mm Ruger recovered from the Buick. The firearm was capable of holding 18 bullets, 17 in the magazine and one in the chamber.

At trial, the Commonwealth presented a Certificate of Non-Licensure showing that on May 18, 2015, [Appellant] was not licensed to carry a firearm.

[Appellant] presented two lifelong friends as witnesses, Joshua Edwards and Bayyan Finney, who attempted to provide an alibi defense. Finney, who was in custody at the time of trial, also testified that the night before his testimony, he made a phone call to his friend, "Mock," who was on the phone with [Appellant] at the time of his call. Mock put Finney on speakerphone so the three of them could have a conversation. [Appellant] asked Finney to trade shoes with him before court, because Finney had dress shoes, and [Appellant] did not want to wear his Reebok Classic sneakers to trial. During cross-examination, Finney denied that

[Appellant] attempted to bribe him with a new pair of shoes in exchange for his testimony at trial.

Trial Court Opinion, 8/15/19, at 2-6 (citations to notes of testimony and footnotes omitted).

On May 3, 2019, the jury convicted Appellant of the aforementioned crimes. That same day, the trial court sentenced Appellant to life in prison without parole. Appellant filed a timely post-sentence motion, which the trial court denied on May 13, 2019. This timely appeal followed. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents four evidentiary issues for our review:

[1.] Is [Appellant] entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground the evidence was insufficient to sustain the verdict in light of the numerous inconsistencies in the Commonwealth's testimony, including but not limited to, ballistic evidence showing the presence of a second shooter, cell tower records showing [Appellant] to be outside the sector encompassing the crime scene at the time of the murder and the failure of the DNA evidence to exclude the possibility of secondary transfer?

[2.] Is [Appellant] entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground that the jury's verdict was against the weight of the evidence in light of the numerous inconsistencies in the Commonwealth's testimony, including but not limited to, ballistic evidence showing the presence of a second shooter, cell tower records showing [Appellant] to be outside the sector encompassing the crime scene at the time of the murder and the failure of the DNA evidence to exclude the possibility of secondary transfer?

[3.] Is [Appellant] entitled to a new trial due [to] the trial court's improper admission of evidence that [Appellant] was on state parole at the time of the killing?

- 5 -

[4.] Is [Appellant] entitled to a new trial due to the trial court's failure to grant a mistrial after the prosecution improperly stated that [Appellant] had attempted to bribe an alibi witness with shoes when the prosecutor was aware that prison phone calls in its possession did not support this inference[?]

Appellant's Brief at 3-4 (reordered for ease of disposition).

Appellant's first two issues challenge the sufficiency and weight of the evidence. We reiterate:

The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, **Tibbs v. Florida**, 457 U.S. 31 (1982); **Commonwealth v. Vogel**, 461 A.2d 604 (Pa. 1983), whereas a claim challenging the weight of the evidence if granted would permit a second trial. **Id.**

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. **Commonwealth v. Santana**, 333 A.2d 876 (Pa. 1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Chambers**, 599 A.2d 630 (Pa. 1991).

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. **Commonwealth v. Whiteman**, 485 A.2d 459 (Pa. Super. 1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. **Tibbs**, 457 U.S. at 38 n.11.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations modified). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted).

In challenging the sufficiency of the evidence, Appellant assails five facets of the evidence presented at trial, asserting: 1) Appellant's statements to Wise and Schofield never specifically indicated he was the killer and "were both vague assertions that could be equally consistent with references to non-criminal activity"; 2) the Commonwealth's decision not to "substrate" failed to eliminate the possibility that the DNA on the murder weapon may have come from a secondary transfer; 3) the cell tower evidence was equally consistent with Appellant "being at the crime scene, his residence or the Mark V Lounge"; 4) Victim's sister's testimony was "extremely suspect";[3] and 5) the medical examiner's autopsy report and testimony clearly raised the possibility of a second shooter. Appellant's Brief at 18-19.

We find no merit to Appellant's sufficiency claim. Notably, to preserve a challenge to the sufficiency of the evidence, an appellant's Rule 1925(b) statement must specify the element or elements of a crime alleged to be

---

[3] This claim goes to weight, as opposed to sufficiency. *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence.").

- 7 -

insufficiently proven. ***Commonwealth v. Brown***, 186 A.3d 985, 990 (Pa. Super. 2018) (citing ***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009)). "Such specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes, each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Id.*** (citation omitted).

Instantly, Appellant failed in his Rule 1925(b) statement to specify which elements of which crime(s)/conviction(s) he is challenging. ***See*** Appellant's Concise Statement, 7/8/19, at 1 (unnumbered). Appellant's sufficiency claim is likewise underdeveloped in his brief. ***See*** Appellant's Brief at 17-19. Although the procedural posture of this case and Appellant's evidentiary assertions convey a strong inference that Appellant, at a minimum, is challenging the sufficiency of the evidence pertaining to his first-degree murder conviction, Appellant does not expressly say so, and does not identify any of his four convictions and their statutory elements. Our review is hindered by the deficiency, from which we could arguably find waiver. However, upon review of the record, and particularly the notes of testimony, we are in agreement with the trial court as to the sufficiency of the evidence supporting all four of Appellant's convictions.

The trial court succinctly and capably addressed the statutory elements of Appellant's four convictions, explaining:

> Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the

evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt. *Commonwealth v. Baumhammers*, 960 A.2d 59, 68 (Pa. 2008). The Commonwealth may sustain its burden of proving each element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Estepp*, 17 A.3d 939, 943 (Pa. Super. 2011) (citing *Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa. Super. 2010)). The fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. *Commonwealth v. Treiber*, 874 A.2d 26, 30 (Pa. 2005).

First-Degree Murder is any unlawful killing committed with malice and the specific intent to kill. 18 Pa.C.S. § 2502(a). Evidence is sufficient to sustain a First-Degree Murder conviction if the Commonwealth established, beyond a reasonable doubt, that (1) a person was unlawfully killed; (2) the defendant killed the person; and (3) the defendant acted with a specific intent to kill. *Commonwealth v. Buford*, 101 A.3d 1182, 1186 (Pa. Super. 2014) (citing *Commonwealth v. Ramos*, 827 A.2d 1195, 1196 (Pa. 2003)). An intentional killing is a "willful, deliberate, and premeditated killing." 18 Pa.C.S. § 2502(d). Malice and specific intent to kill may both be inferred from a defendant's use of a weapon on a vital part of the victim's body. *Buford*, 101 A.2d at 1186; *Commonwealth v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012).

There is no question that [Appellant] acted with the specific intent to kill [the Victim]. In total, [Appellant] deliberately pulled the trigger eighteen times, and hit the decedent with each and every bullet. N.T. 5/1/2019 at 172. The decedent died as a result of these gunshot wounds. *Id.* at 178. After killing the decedent, knowing that he had "f***ed up," [Appellant] tried to cover his tracks by soliciting Schofield and Wise to retrieve the Buick from the crime scene. [Appellant's] DNA was found on the handgun's slide, grip, and trigger. N.T. 5/1/2019 at 89-90. This handgun, which was recovered from the Buick, was the same gun used to shoot the decedent eighteen times. N.T. 5/2/2019 at 81. [Appellant's] cell phone was also located in the same geographical area as the crime scene at the time of the murder. The evidence presented at trial was more than sufficient to support a conviction for First-Degree Murder.

To sustain a conviction for VUFA 6106, the Commonwealth must prove beyond a reasonable doubt that the defendant carried a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license. *See* 18 Pa.C.S. § 6106(a). To convict a defendant of VUFA 6108, the Commonwealth must prove beyond a reasonable doubt that the defendant carried a firearm at any time upon the public streets or upon any public property in a city of the first class without a license to carry a firearm or without a licensing exemption. *See* 18 Pa.C.S. § 6108. To sustain a conviction for PIC, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm or other weapon concealed upon his person with intent to employ it criminally. *See* 18 Pa.C.S. § 907(b).

Here, the evidence clearly established that [Appellant] carried the firearm in the Buick Enclave, as the gun was recovered from the floor mat inside the vehicle. Further, [Appellant] carried the gun on the street when he removed it from the vehicle, and used it to shoot the decedent eighteen times. The Commonwealth also presented a certificate of non-licensure for [Appellant], establishing that he was not licensed to carry a firearm on May 18, 2015, the date of the murder. N.T. 5/2/2019 at 134-136; *see also* Commonwealth Exhibit C-106. Therefore, [Appellant's] convictions for VUFA 6106, VUFA 6108, and PIC w[ere] sufficiently supported by the evidence presented at trial.

Trial Court Opinion, 8/15/19, at 9-11.

Consistent with the foregoing, we reject Appellant's issue regarding the sufficiency of the evidence, and turn to his claim regarding weight.[4, 5] *See*

---

[4] Again, although Appellant fails to expressly identify which convictions he is challenging, his argument indicates—and the logical inference—is that, at a minimum, he is assailing his conviction of first-degree murder. *See* Appellant's Brief at 16-17.

[5] Appellant preserved his weight claim in compliance with Pa.R.Crim.P. 607 by raising it with the trial court in a post-sentence motion. Appellant's Post-Sentence Motion, 5/10/19, at 1 (unnumbered).

Appellant's Brief at 16-17. Appellant references "numerous inconsistencies in the Commonwealth's testimony[.]" *Id.* at 16. Specifically, Appellant claims the trial court abused its discretion in dismissing his motion for a new trial because:

> [Appellant's] statements never directly indicated he was the killer. . . . [T]he Commonwealth's decision not to use a substrate failed to eliminate the possibility that the DNA on the murder weapon may have come from secondary transfer. . . . [T]he testimony of [Victim's] sister was extremely suspect[.] . . . [T]he evidence clearly raised the possibility of a second shooter[.]

Appellant's Brief at 16-17.

> We have explained:
>
> Appellate review of a weight claim *is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original). To allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (citation omitted).

The trial court explained:

[Appellant's] argument that the verdict was against the weight of

the evidence ignores the overwhelming evidence presented against him at trial. [Appellant's] DNA was found on the handgun and in the Buick, and his cell phone was located in the same geographical area as the crime scene at the time of the murder. [Appellant's] weight of the evidence claim is without merit as the verdict was consistent with the evidence and a far cry from shocking one's sense of justice.

Trial Court Opinion, 8/15/19, at 12.

The trial court did not abuse its discretion. As this Court has repeatedly stated, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (citation omitted). In rejecting Appellant's weight claim, the trial court cites circumstantial evidence to support the jury's determination that Appellant committed first-degree murder. Trial Court Opinion, 8/15/19, at 12. In addition to the evidence referenced by the trial court, the jury heard evidence that Appellant's legal name is Leslie Williams. N.T., 5/1/19, at 38. On the night he was killed, the Victim told his sister that he was going to meet "Leslie." N.T., 5/2/19, at 26-27. After hearing multiple gunshots, responding police officers found the Victim lying on the ground with multiple gunshot wounds. N.T., 4/29/19, at 268.

Officer Dunkley testified that 18 fired cartridge casings were on the ground near the Victim's body, and led "from his body to the rear of a [silver] Buick SUV." *Id.* at 269. Inside the Buick, Officer Dunkley found a Ruger 9-millimeter handgun with its slide in the locked back position, and capable of holding 18 rounds. *Id.*; N.T., 4/30/19, at 27. When the handgun was tested,

- 12 -

Appellant's DNA was present on its slide, grip, and trigger. *Id.* at 89-90. Detective Dunlap testified that cell phone records indicated that Appellant's phone was in the area of the crime scene when the Victim was shot. N.T., 5/2/19, at 76-82.

In his weight argument, Appellant essentially asks us to reassess and reweigh the evidence. *See* Appellant's Brief at 16-17. However, it is well settled that we may not substitute our judgment for that of the factfinder — whether a jury or the trial court — because it is the province of the factfinder to assess the credibility of the witnesses and evidence. *See Commonwealth v. DeJesus*, 860 A.2d 102 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."). The jury in this case heard ample evidence from which to conclude that Appellant committed first-degree murder when he shot and killed the Victim. Therefore, the trial court properly exercised its discretion in determining that "the verdict was consistent with the evidence and a far cry from shocking one's sense of justice." Trial Court Opinion, 8/15/19, at 12. Appellant's weight claim does not merit relief.

In his third issue, Appellant argues that the trial court erred in admitting the testimony of United States Marshals Fugitive Task Force Agent Timothy Stevenson. *See* Appellant's Brief at 20-21. Appellant asserts that testimony "of such limited probative value simply [does] not outweigh the prejudicial value of evidence which clearly demonstrated that [Appellant] was on [s]tate

- 13 -

[p]arole, such as references to [Appellant's] 'Department of Corrections name' and his[] 'approved parole residence.'" ***Id.*** at 21.

> It is well settled that the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Hicks***, 151 A.3d 216, 224 (Pa. Super. 2016) (citations omitted). Our Supreme Court has explained generally, "all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." ***Commonwealth v. Dillon***, 925 A.2d 131, 136 (Pa. 2007). An exception to this rule is that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Evidence may be admissible for a purpose other than to show criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Even where an exception to Rule 404(b)'s prohibition against evidence of prior bad acts applies, the evidence is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E.

404(b)(2). "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 (comment).

Here, the trial court explained:

> At trial, Agent Timothy Stevenson testified that he knew [Appellant] by his legal name, Leslie Williams, as well as his name in the Department of Corrections database, Tremaine Bostic. On two different dates in November of 2015, Agent Stevenson went to 1336 North Allison Street, [Appellant's] approved parole residence, in an attempt to locate [Appellant]. **Agent Stevenson's testimony was offered to the jury to explain law enforcement's efforts to locate [Appellant] and obtain his DNA**.

> With [Appellant's] agreement, this [c]ourt provided the following jury instruction to ensure that the jury considered this evidence only for lawful purposes:

>> Now, you also may have heard evidence suggesting that [Appellant] was guilty of improper conduct for which he is not on trial. I am speaking of the testimony to the effect that [Appellant] was on parole prior to the instant matter[.] . . . Understand that the evidence that [Appellant] was on parole is before you for a limited purpose. That is for the purpose of tending to show the course of the police investigation[.] . . . Understand that the evidence must be considered by you for these reasons alone, and for no other purposes. In other words, you must not regard this evidence as showing that [Appellant] is a person every [*sic*] bad character or criminal tendencies from which you might be inclined to infer guilt.

> [N.T., 5/3/19, at 119-20].

> The law presumes that the jury will follow the instructions of the court. This instruction properly guided the jury's deliberations on how to consider the evidence that [Appellant] was on parole at the time of the instant offense, and specifically

- 15 -

> instructed the jury that the evidence could not be considered to judge [Appellant's] character or criminal tendencies. The introduction of this evidence was not in error, and this [court] provided a limiting instruction on its purpose. This claim lacks merit.

Trial Court Opinion, 8/15/19, at 7-8 (some citations to notes of testimony omitted, emphasis added).

We agree with the trial court. The details of Appellant's "prior crimes, wrongs or acts" were not introduced; rather, it was Appellant's parole status that was relevant to the police investigation and location of Appellant. Further, any prejudice was ameliorated by the trial court's instruction to the jury. *See Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) ("[T]he trial court gave the jury cautionary instructions concerning the prior bad acts evidence; the court advised the jury of the limited purpose for which the evidence was introduced and that they could not consider the evidence as proof that [a]ppellant was a person of bad character or had criminal tendencies. We conclude that these instructions ameliorated any undue prejudice caused by the introduction of the prior bad acts.") (citations omitted).

"Jurors are presumed to follow the trial court's instructions," *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014), and "[e]vidence will not be prohibited merely because it is harmful to the defendant." *Commonwealth v. Gad*, 190 A.3d 600, 605 (Pa. Super. 2018) (citation omitted). Here, the trial court's jury instruction "minimized the likelihood that the [other acts] evidence inflamed the jury or caused it to convict Appellant

on an improper basis." ***Hairston***, 84 A.3d at 666. The trial court did not abuse its discretion, and thus we find no merit to Appellant's third issue.

Finally, Appellant challenges the trial court's denial of his motion for mistrial. Appellant argues "a new trial is warrant[ed] by the [Commonwealth's] remarks in closing argument that [Appellant] attempted to bribe alibi witness, Bayyan Finney, with the promise of a pair of sneakers." Appellant's Brief at 15.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

***Commonwealth v. Baldwin***, 158 A.3d 1287, 1293 (Pa. Super. 2017) (citation omitted).

With regard to a claim of prosecutorial misconduct during closing argument, it is well-settled that:

> [t]he prosecutor is allowed to vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from the evidence. In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Ragland*, 991 A.2d 336, 340-41 (Pa. Super. 2010)

(citations omitted).

At trial, alibi witness Bayyan Finney testified that he had spoken with Appellant by telephone the prior evening. N.T., 5/2/19, at 219. Finney testified that during the conversation, he and Appellant discussed swapping shoes for trial. *Id.* at 221-222. Based on Finney's testimony, the Commonwealth made the following statement during closing arguments:

> And again, Ladies and Gentlemen, there's still more. Think about it. Think about what happened yesterday. The alibi witnesses. This is a big deal. It is a big deal that Bayyan Finney got on the stand and lied to you. [Appellant] thought he said something like maybe he thought it was bad that we talked. It was bad that they talked. And he admitted it. I mean he lied, and he lied, and he lied, and then he finally admitted it. This was a quid pro quo, Ladies and Gentlemen. This is a huge deal. This shakes the foundations of our society. This shakes the foundations of the criminal justice system. You cannot be calling an alibi witness, and then calling the alibi witness the night before you put that witness on the stand talking about giving that witness your shoes.

N.T., 5/3/19, at 96-97. Defense counsel immediately objected, and the trial court instructed the jury that "your recollection of the facts will control." *Id.*

at 97. After closing arguments, Appellant's counsel made an oral motion for a mistrial, which the trial court denied. *Id.* at 102-104.

The trial court explained its denial of Appellant's request:

> [Appellant] alleges that this [c]ourt erred by not granting a mistrial after the Commonwealth [indicated] that [Appellant] attempted to bribe an alibi witness with shoes, when the [Commonwealth] was aware that prison phone calls did not support this inference. . . .
>
> After the Defense rested, the Commonwealth sought to offer rebuttal evidence in the form of prison phone calls between [Appellant] and Finney to show that [Appellant] bribed Finney with new shoes in exchange for his testimony. This [c]ourt, outside of the presence of the jury, listened to phone calls between [Appellant] and Finney, where [Appellant] indicated that he would give Finney a new pair of shoes when he came to testify. After hearing the phone calls, the [Commonwealth] opted not to offer them into evidence.
>
> During closing arguments, the [Commonwealth] referenced Finney's testimony and alleged that he lied on the stand about his conversation with [Appellant] on the night before trial. This [c]ourt sustained [Appellant's] objection, and reminded the jury that their recollection of the facts should control. At the conclusion of closing arguments, [Appellant] moved for a mistrial, on the basis that the [Commonwealth] made false inferences that [Appellant] tried to bribe Finney with a new pair of shoes. Based on Finney's testimony that [Appellant] wanted to trade shoes with him, it was reasonable for the jury to infer that [Appellant] was attempting to bribe Finney with new shoes.
>
> This [c]ourt properly instructed the jury that their recollection of the facts, which included Finney's testimony, controlled. During its jury charge, this [c]ourt again instructed the jury that they are "not bound by this [court's] recollection nor by the recollection of the evidence as it was presented to you in arguments today." Further, based on the overwhelming evidence against [Appellant], he was not deprived of a fair trial by the [Commonwealth's] single comment during closing argument. . . .

Trial Court Opinion, 8/15/19, at 8-9.

- 19 -

Again, we discern no error. From Finney's testimony, the Commonwealth's statements during closing constituted "a legitimate inference" from the evidence, ***Ragland***, 991 A.2d at 340, *i.e.*, that Appellant attempted to bribe Finney for his alibi testimony given the content of their phone conversation the night before Finney testified. Moreover, the trial court, "in an abundance of caution, provided the jury with a cautionary instruction." Trial Court Opinion, 8/15/19, at 9. On this record, we cannot conclude that Appellant was deprived of a fair trial, or that the trial court erred in denying Appellant's motion for a mistrial.

For the above reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/20